Statement of the Case.
MONROE, J.
Plaintiff sues for damages for alleged slander, and we find the case presented 'by the record to be as follows;
Defendant owns a house, some of the windows of which open upon the yard of another house, owned and occupied by plaintiff’s mother, where plaintiff, with her husband and children, and other tenants also, reside. The windows mentioned had been closed by planks nailed across them from the outside, and one day in June Mrs. Taoramina, a tenant occupying a room in defendant’s house, asked him if he would have the planks removed from her window, and he spoke to plaintiff’s husband on the subject, and received a reply to the effect that he (Gilardino) did not control the matter, but that, if he (Patorno) should remove the planks he thought there would be no trouble about it. The planks were accordingly removed, either by Patorno or Mrs. Taoramina. On the same day, or the next, however, Mrs. Gilardino (plaintiff) ascended a ladder and nailed them back again, the pleadings of Mrs. Taoramina to the contrary notwithstanding, and Mrs. Taoramina told Patorno what had been done. Patorno thereupon again spoke to Gilardino; but he, thinking that Patorno was mistaken in supposing that the planks had been replaced, invited him to come into the yard and see for himself, which Patorno did, and, finding that the planks had been replaced, began a conversation with Gilardino on the subject. Thereupon Mrs. Gilardino, who had been upstairs, came down into the yard, and the trouble began. Her version of it is as follows:
*258 “Mr. Patorno entered inside, and he addressed my husband; and he says: ‘Is this the thanks you are giving me?’ My husband politely answered and says: ‘Mr. Patorno, I have got nothing to do with this.’ And then he addressed me — I was standing at the foot of the stairs when he addressed himself to me — and he says: ‘What, you dirty villain; you are cruel. You have nailed up the planks to the window.’ He turned around and says: ‘* * *’ [here the witness attributes a very ugly epithet to defendant]. And in that manner I turned around and ordered him out of the house, and when he was going through the alley he said the same words, and when hs got in front, on the banquette, he called me ‘* * *’ [another epithet, uglier, if possible, than the first]. Q. Well; did he speak loud? A. Yes, sir; you could hear him a mile distant. * * Q. Did you say anything, or use any bad language, to Mr. Patorno, when he said that? A. No, sir. <J. Did you call Patorno a ‘ladro’? A. Well, outside, when he got me so angry, by using the words that he used to me. * * * Q. Did you call him ‘* * *’ [a very bad name, indeed]? A. After the question he answered me, I did; after the words he used. * * *”
Cross-examined:
“Q. Where were you when Mr. Patorno came into the yard? A. Upstairs. Q. What made you come down? A. Hearing him hallooing at my husband like that. * * * Q. Why did you follow Mr. Patorno into the' street? A. I was putting him out because he was calling me a dirty word. Q. And you used no word towards him? A. No, sir. * * * Q. You say you used no word towards him, at all? A. No, sir. Q. Except ‘* * *’ and ‘* * *’ [two about as ugly epithets as the soft and beautiful Italian language affords]? A. No, sir; he called me ** * *’ and ‘* * *’ [epithets which are entirely taboo in polite society]. That is the reason why I answered the question to him.”
Defendant says:
“I walked in, and I found, in the middle of-the yard, Mr. Gilardino. waiting for me. He was by himself, and I addressed him. Says 1: ‘There it is. There is the planks on that window. What right your wife has to go up there and nail those planks on the frame of my window?’ Mrs. Gilardino was not present, but she came from upstairs, and started at me; says: ‘Yes; you * * *’ [epithet reflecting not only on defendant’s personal character, but upon his ancestors, as well], T done it.’ We started to curse each other. I wanted to get out of her way, because I didn’t want her to hit me; but she got hold of a chair, and the best thing I could do was to retreat until I got to the banquette, and she was facing me, and we were exchanging all those bad words that have been recited in the case,” etc.
There is an abundance of testimony to the effect that defendant literally backed out of the yard, through the alley, and onto the banquette, followed by plaintiff, whose husband was endeavoring to restrain her, and that, in the meanwhile, they applied to each other language which, we are quite sure, neither of them deserved. Plaintiff caused to be examined, in her behalf, two old men (who say that they were tenants of her mother at the time of the controversy, but, who, when examined, were inmates of an almshouse), for the purpose of showing that the use of epithets was begun by defendant; but, the whole situation considered, we do not find that their testimony establishes the fact. One of them says that he went into the yard, and saw Patorno, and heard “cursing” and “fussing”; but, being asked:
“You don’t know who was cursing?”
He replied:
“No; I hear fussing. I don’t know the fussing in the case.”
Th'e other witness testifies to something that, he says, took place in the morning; whereas the trouble out of which this suit has arisen occurred in the afternoon. He says he saw nobody save Mr. Patorno and Mrs. Gilardino; whereas the latter’s husband was there also. He says:
“I seen Madame Gilardino and Mr. Patorno, and they were fussing, and once I heard them call * * * and * * *. Q. Who was saying that? A. Mr. Patorno. * * * Q. Had the lady done or said anything to justify him calling her that? A. I never heard one word from the lady. Q. You never heard one word from the lady? A. No. Q. And you were there all the time? A. I was laying on my mattress, the same way, and listening. I was upstairs. That was my time to come home; 9, half past 9, 10 o’clock, sometimes” [in the mornings].
The judge a quo rejected plaintiff’s demand, and she has appealed.
Opinion.
“An action in damages for slander, insult and abuse will not be maintained where it appears *260 to have been a case of mutual interchange of opprobrious epithets.” Bloom v. Crescioni, 109 La. 667, 33 South. 724, 94 Am. St. Rep. 456.
See, also, Fulda v. Caldwell, 9 La. Ann. 358; Johnston v. Barrett, 36 La. Ann. 320; Goldberg v. Dobberton, 46 La. Ann. 1303, 16 South. 192, 28 L. R. A. 721; Newell on Defamation, p. 903, § 81; Townshend on Slander, p. 688, § 414.
Judgment affirmed.