**(109 So. 675)**

**STATE ex rel. ITEM CO., Limited, v. COMMISSIONER OF PUBLIC FINANCES OF CITY OF NEW ORLEANS. (No. 28201.)**

(Aug. 30, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Newspapers ☞3(4).**

. Newspaper published every day but Sunday is "daily" paper (citing Words and Phrases, First and Second Series, "Daily Newspaper").

**2. Newspapers ☞3(4)—Newspaper published every morning except Sunday held "daily" newspaper within New Orleans charter (Act No. 159 of 1912, § 15, as amended by Act No. 35 of 1922, § 1).**

Newspaper designated Morning Tribune, published every morning of the week except Sunday, is within New Orleans charter (Act No. 159 of 1912, § 15, as amended by Act No. 35 of 1922, § 1), and legal notice published therein which appears on each day it is published and again on Monday following would be published consecutively although Sunday intervened.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Daily Newspaper.]

**3. Newspapers ☞3(2).**

Where Sunday edition designated Item-Tribune was part of morning paper designated Morning Tribune, legal publication published in both papers would be valid as published in same paper.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Mandamus by the State of Louisiana, on the relation of the Item Company, Limited, against the Commissioner of Public Finances of the City of New Orleans. Preliminary writ made peremptory, and defendant appeals. Affirmed.

B. I. Cahn and Henry B. Curtis, Asst. City Attys., both of New Orleans, for appellant.

Eberhard P. Deutsch, of New Orleans, for appellee.

OVERTON, J. The question presented for decision is whether the Morning Tribune, a newspaper published by relator, is a daily paper. The controversy grows out of the refusal of defendant to permit relator to bid for the public printing of the city of New Orleans, and of various boards in and of the city, for the period of two years, from September 9, 1926, on the ground that the Morning Tribune, for the account of which plaintiff desires to bid, and in which it proposes to make the legal publications required, is not a daily newspaper, and hence a bid from relator, the publication to be made in the Tribune, would not be a bid complying with the law and the charter of the city, requiring the publications to be made in a daily newspaper published in the city of New Orleans.

The charter of the city requires the mayor to publish all ordinances and resolutions passed by the commission council, and the clerk of the council to publish the proceedings of that body, the whole in a newspaper published daily in the city, which shall have been in existence as a daily newspaper for one year prior to the date of the contract under which the publications are made, the contract to be let to the lowest bidder able to furnish the required bond. The charter

reserves the right to the parish school board, to the sewerage and water board, and to other boards and commissions in, or of, the city, to petition the mayor in writing to include in the contract to be let such publications as these boards and commissions may be required by law to make. Section 1 of Act 35 of 1922, amending section 15 of Act 159 of 1912.

The ordinance directing defendant to call for bids includes the letting of the printing and publishing for all the boards and commissions called for by the act, and requires that the advertisement call for bids to make the publications required in the regular edition of the newspaper bidding, that is, in the one delivered to subscribers, commercial and residential, throughout the city, and not in extra, special, or racing editions.

The evidence discloses that relator publishes a paper known as the New Orleans Item. This paper is an afternoon paper. It is published under that name on every afternoon of the year except on Sunday afternoons, though a sporting edition is published under that name on Sunday evenings. Relator also publishes the Morning Tribune. This paper is published every morning under the name of the Morning Tribune, by the same management, and from the same press, as the Item, except on Sunday mornings. Both papers have their own subscription lists, and, though unimportant to the issue herein, it may be added that each has its own news service, the Item having the Associated Press and the United News, and the Morning Tribune, the United Press and the Consolidated News, though occasionally an article furnished by the United News finds its way into the Tribune. On Sunday mornings relator publishes, and has been doing so for over a year, and ever since it began publishing the Morning Tribune, the Item-Tribune. The paper published under this name is published under the same management as the Item and the Tribune, and has the news service of the latter. It is intended to be the regular Sunday edition of the Item and of the Tribune, and hence is styled the Item-Tribune. It carries the serial numbers of both papers. Advertisements that are intended to be published daily for a number of days consecutively in the Item or the Tribune are published on Sundays in the Item-Tribune. Serial stories that are published in either paper daily are continued in the Item-Tribune on Sundays. The Item-Tribune is delivered to the subscribers of both the other papers as the Sunday edition of their paper. With reference to this, Mr. Thompson, who has charge of the distribution, in answer to the following questions, propounded to him, gave the following answers:

"Q. Is a copy of the Sunday Item-Tribune delivered on Sunday morning to each and every subscriber of the Morning Tribune?  A. Yes.
"Q. There is no exception?  A. The only exception is where people desire to buy on the street, and we cannot control that.
"Q. We are talking now of subscriptions?  A. Yes; we deliver it to them.  *  *  *
"Q. A subscription does not include the Item and Tribune service?  A. In the city we only deliver the combination in the Sunday paper."

[1] Were we to consider the Item-Tribune a different paper from the Morning Tribune, and not the Sunday edition of the latter, still the Morning Tribune, notwithstanding such a view, would be deemed in the contemplation of law and in the popular acceptation of the term, a daily newspaper. This is so, because "the term daily, as applied to the publication of newspapers is relative. It has never been given the exclusive meaning of every day of the week, month, or year, but papers published every day except Monday, or every day except both Sunday and Monday are regarded by the general public as daily papers." Fairhaven Publishing Co. v. City of Bellingham, 51 Wash. 108, 98 P. 97, 16 Ann. Cas. 420.  In Puget Sound Pub-

lishing Co. v. Times Printing Co., 33 Wash. 551, 74 P. 802, and in First National Bank of Parsons v. Kennedy, 98 Kan. 51, 157 P. 417, it was held that a newspaper may be a daily paper, though not published on Sundays or legal holidays. See, also, Wilson v. Petzold, 116 Ky. 873, 878, 76 S. W. 1093, and Richardson v. Toben, 45 Cal. 30.

In Ruling Case Law, vol. 20, p. 206, it is said:

"A newspaper need not be published on each of the seven days of the week in order to be a daily newspaper. The term is to be understood in its usual popular sense; and in this sense it is clear that a paper which, according to its usual custom, is published every day of the week except one is a daily paper. Otherwise, a paper which is published every day except Sunday would not be a daily paper. So it has been held that a newspaper which is printed and published five days in each week is a daily newspaper within the meaning of a provision requiring all legal advertisements to be published in a daily newspaper. On the other hand, a Sunday edition of a daily paper is not a weekly paper."

See, also, which are to the same effect, 17 C. J. p. 696; Words and Phrases, First and Second Series, verbo "Daily Newspaper"; Black's Law Dictionary; and volume 1, Bouv. Law Dict. p. 747.

[2] In our opinion the term "daily newspaper," or its equivalent, "a newspaper published daily," is used in the city charter in its ordinary sense, as it apparently is in statutes generally regarding publications and advertisements required by law. From this it follows that if the Item-Tribune were not regarded as the Sunday edition of the Morning Tribune as well as of the Item, still the Morning Tribune would be considered a daily newspaper within the contemplation of the charter of the city, and a notice or other publication which the law requires or may require to be published for a number of days, which appeared on each of the six days on which the paper is published and then again on the following Monday, would be deemed to be published consecutively in a daily newspaper although a Sunday would intervene between two of the publications. See, in this connection, City of El Paso v. Ft. Dearborn National Bank (Tex. Civ. App.) 71 S. W. 799.

[3] However, we do not regard the Item-Tribune as a different paper from the Morning Tribune. It is published under the same management and delivered to the subscribers of the Morning Tribune as the Sunday edition of that paper. The fact that it is also delivered to the subscribers of the Item as the Sunday edition of that paper does not change the case. Following the publication of the Morning Tribune and the Item-Tribune, even into unimportant details, the only difference worthy of note between the two publications is the slight difference in the name, and that is insufficient to prevent the Item-Tribune from being the Sunday edition of the Morning Tribune. Hence, a legal publication or advertisement which could lawfully be made on Sunday, published in the Morning Tribune and the Item-Tribune, would be deemed published in the same paper, and would be valid.

For the foregoing reasons, we think that our learned brother of the lower court was correct in making peremptory the preliminary writ of mandamus that issued herein.

Accordingly, the judgment appealed from is affirmed.

ROGERS, J., takes no part.

LAND and THOMPSON, JJ., absent.