152 So. 318

McDONALD et al. v. SHREVEPORT MUT.
BLDG. ASS'N et al.

No. 32556.

Nov. 27, 1933.

Rehearing Denied Jan. 2, 1934.

William W. McDonald, Frank J. Looney, and Albert P. Garland, all of Shreveport, for appellants.

Frank E. Murphy and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport (Wise, Randolph, Rendall & Freyer, Robert Roberts, Cecil Morgan, Herold, Cousin & Herold, Wilkinson, Lewis & Wilkinson, Pugh, Grimmet & Boatner, Lyons & Prentiss, Barksdale, Bullock, Warren, Clark & Van Hook, Smitherman & Smitherman, Lee, Gilmer & Lee, Dimick & Hamilton, Dickson & Denny, Herndon & Herndon, Harry V. Booth, Lewell C. Butler, Mabry & Carstarphen, Robert L. Garrett, C. B. Prothro, Geo. T. McSween, Edward S. Klein, L. Percy Garrot, D. C. Scarborough, Jr., Robert P. Hunter, Hardin & Coleman, Melvin F. Johnson, J. G. Palmer, Crain & Johnston, Irion & Switzer, Wm. H. Cook, Jackson & Smith, Hendrick & Hendrick, Chandler & Chandler, Alexander & Alexander, Clifton F. Davis, Malcolm W. Feist, George Thurber, Craig, Bolin, Magee & Baucum, Byron A. Irwin, Blanchard & Pyburn, John F. Slattery, Cook & Cook, Bryan E. Bush, John B. Files, Tucker & Mason, W. M. Phillips, and C. F. Currier, all of Shreveport, of counsel) for appellee Shreveport Mut. Bldg. Ass'n.

ROGERS, Justice.

Alleging an indebtedness in excess of $2,-800, the Shreveport Mutual Building Association caused to be sold under executory process the property of Mrs. Emm S. McDonald, wife of William W. McDonald, described as lot 50, Querbes subdivision, with the improvements thereon, in the city of Shreveport. At the sale, the mortgagee building association became the adjudicatee, and the property was formally deeded to it by the sheriff. The mortgagor having refused to surrender the property, a writ of possession was issued, when the mortgagor, assisted by her husband, sued to enjoin the sheriff and the building association from dispossessing them, alleging the invalidity of the sale under executory process.

All the judges of the district court of Caddo parish recused themselves and appointed Judge J. F. McInnis, of the Twenty-Sixth judicial district court, to try the case. After hearing the evidence and the arguments of counsel, the trial judge rejected plaintiffs' demands and recalled the restraining order which they had obtained. From this judgment plaintiffs have appealed.

Plaintiffs allege that the sale under executory process is invalid, because the notice thereof was never legally advertised in a newspaper, but was published only in a trade sheet printed and distributed in the city of Shreveport under the name of "The Daily Legal News."

Therefore the sole question for decision is whether the Daily Legal News is a newspaper within the contemplation of the laws of this state, and, as such may properly be used for the publication of legal and judicial advertisements.

Section 16 of Act No. 49 of 1877 provides: "That in all parishes of the State outside the parish of Orleans, where advertisements are required to be made in relation to judicial proceedings, or in the sale of property under judicial process, or in any other legal proceeding of whatsoever kind, they shall be published in an English newspaper printed in

the parish in which the proceedings are carried on; and if there be no newspaper published in the parish, the advertisements shall be made by posting them at or near the front door of the courthouse, or the place used as such, and at two other public places in different parts of the parish. * * * " And Act No. 33 of 1916 provides that judicial sales may be advertised in either a morning or an afternoon newspaper. The latter statute refers manifestly only to those cities of the state in which either a morning or an evening newspaper, or both, are published. The population of Shreveport is approximately 76,000, and the population of Caddo parish is approximately 125,000. There are two newspapers published in the city, the Journal, having a daily circulation in excess of 25,000, and the Times, having a somewhat larger daily circulation.

On the trial of the case, there were offered in evidence six copies of the Daily Legal News containing advertisements of the sale of plaintiffs' property and one copy in which the advertisement did not appear. All these issues are printed on paper 12x18 inches in size, five columns to the page, and range from four to eight pages an issue. The publication specializes in news relating to the courts and legal matters generally in Caddo parish. About 95 per cent. of its contents is composed of information regarding the courts, filings in the clerk's office, legal notices, and advertisements of judicial sales. The paper carries a small amount of advertising matter, largely pertaining to legal and real estate businesses, the daily market report, local weather forecast, building permits, changes of addresses, and notices of fires occurring in Shreveport. It contains a few other news items, one small cartoon on the front page, entitled, "Hambone's Meditations," and a larger cartoon on the last page, entitled, "That Little Game." It employs no editorial writer and no editorial has ever appeared in any issue of the paper. It has no agents outside the city of Shreveport, and has no correspondents, and is not a subscriber to the Associated Press nor to any other news bureau. Prior to this suit, no reporter was employed, and the paper was not sold on the streets. But since the suit was filed a reporter has been employed, although it was not shown what he reports, and five copies of the paper are left daily for sale at one news stand. Admittedly, no news is received through any of the news-gathering agencies, and the few items of news appearing in its columns are copied from other publications. No application has been made to the postal authorities to admit the paper to the mails as second-class matter. It is published daily except Sundays and legal holidays. The subscription price is $1.50 for one month, $4 for three months, $7 for six months, $12 for twelve months, and for mailing 25 cents per month extra. The paper has a list of 495 paid subscribers, to most of whom delivery is made by messenger. Seventy-nine subscribers are outside of Shreveport. A list of the classification of the subscribers was filed in evidence, and shows 157 different classes to whom the paper is sent. But it is highly probable that by far the larger number of its subscribers are of the professional and business classes who are specially interested in news of a legal and official nature.

■ Newspapers are of so many varieties that it would be unsafe to attempt to give any

definition of the term except the very general one that, according to the usage of the business world and in the ordinary understanding, a newspaper is a publication appearing at regular, or almost regular, intervals, at short periods of time, as daily or weekly, usually in sheet form, and containing news; that is, reports of happenings of recent occurrence of a varied character, such as political, social, moral, religious, and other subjects intended for the information of the general reader. And the fact that a publication has only a limited circulation does not prevent it from coming within the definition. 20 R. C. L. pp. 201, 202. See, also, to the same effect, 46 C. J. pp. 18, 19.

Under the decisions of various state courts, the general rule has been formulated that, even if a publication is devoted chiefly to a particular class, profession, trade, or calling, it will not be deprived of its character as a newspaper, if it also devotes its columns to the dissemination of news that is of importance and of interest to the general public. Burak v. Ditson, 209 Iowa, 926, 229 N. W. 227, 68 A. L. R. 542, and the cases contained in the notation thereunder at page 542 of 68 A. L. R.

The question of whether a publication is a newspaper as defined in the decisions is always one which must be determined from the facts presented in each particular case. And, while, as stated in 20 R. C. L., at page 203, "It is difficult, if not impossible, to determine with clearness and exactness where the lines of demarkation should be drawn between a newspaper, in a legal and common acceptation of the term, and the numerous publications devoted to some special purpose, and which circulate only among a certain class of people, and which are not within the purview of statutes requiring publication of legal notices in some newspaper," nevertheless, keeping in mind the primary purpose of publishing legal notices and judicial advertisements is to give them the widest publicity possible, it would be manifestly unjust, as well as against the spirit of the law, to class as a newspaper any publication catering to a particular group of the people, unless such publication clearly possesses the general characteristics of a newspaper as the term is ordinarily and popularly understood. This view is supported by our decision in State ex rel. Item Co., Ltd., v. Commissioner of Public Finances, 161 La. 915, 109 So. 675, 676. There, in construing the city charter of New Orleans requiring the publication of ordinances, resolutions, and proceedings of the municipal council to be in a newspaper published daily in the city, this court declared that in its opinion, "the term 'daily newspaper,' or its equivalent, 'a newspaper published daily,' is used in the city charter in its ordinary sense, as it apparently is in statutes generally regarding publications and advertisements required by law."

The appellee cites a number of decisions, notably Burak v. Ditson, supra, which have a bearing, more or less, upon the issue presented by this case. But none of the decisions on which appellee relies departs from the rule that, in order to be classed as a newspaper, a periodical published for the benefit and in the interest of a particular class or profession should also carry the general local and foreign news and current events.

The two cases having the most direct bearing upon the issue involved in this case are

Continental Life Insurance Co. v. Mahoney, 185 Ark. 748, 49 S.W.(2d) 371, 372, and State v. Rose, 93 Fla. 1018, 114 So. 373. In fact, Continental Life Insurance Co. v. Mahoney is on all fours with the instant case. There, as here, the publication under review bore the name of "The Daily Legal News," and the character of the publication, as appears from the opinion of the court, was the same as the Shreveport publication. Moreover, the Arkansas paper was a member of the Associated Court and Commercial Newspapers of the United States and was classified in the post office at Little Rock as second-class mail matter.

The Supreme Court of Arkansas, after examination of the authorities cited by the parties, held: "The primary purpose for the printing of legal advertisements and notices of sale of property under orders of a court is to give to the notice the widest publicity practicable. Therefore, the definition of a newspaper, within the meaning of the statute, is to be taken in its popular sense, which is one to which the general public would resort in order to be informed of the news and intelligence of the day, and which is published at stated intervals and carries reports of those happenings of general importance and interest to the ordinary individual."

The trial judge thought there was a distinction between the cases, because the Arkansas statute provides that judicial advertisements shall be published in a newspaper with a bona fide circulation. But, in our opinion, the words add nothing to the meaning of the term "newspaper," which in itself implies a bona fide circulation, whether that circulation be large or small.

The appellee states that since the decision in Continental Life Insurance Co. v. Mahoney, the Supreme Court of Arkansas has in effect reversed itself and held the same publication was qualified under the Arkansas statute to publish judicial advertisements. The case to which appellee refers is Williamson v. Nixon, 62 S.W.(2d) 24, and the decree therein was rendered on July 10, 1933.

But we do not find that the court in the second case involving the Daily Legal News, of Little Rock, has departed in any way from the principle that it announced in the first case involving that paper. The record in the second case shows that the subscription price of the paper had been reduced to $12 a year, that its circulation had materially increased since the time of the former appeal, and that, in addition, it had considerably enlarged its news service. From all of which the court felt constrained to hold "that it (the Daily Legal News) has become and is a newspaper" within the meaning of the statute, and is therefore eligible to print in its columns the legal advertisements which may be legally printed in other daily papers.

In State v. Rose, the Supreme Court of Florida was called upon to construe the term "newspaper" as used in the constructive service statute of the state with reference to a publication known as the "Daily Record." The facts, as set forth in the opinion, are that the Daily Record is published at Miami every day except Sundays and legal holidays, with a subscription list of 350 or less in a county containing a population of 150,000; that it is a well-prepared five-column folio, 12x15½ inches. About one-half of three columns on the front page is devoted to "News of the Day." All other space is devoted to the pro-

ceedings and transactions of the various courts of the county, including a few advertisements. A portion of the space assigned to "News of the Day" is occupied by subject-matter pertaining to the courts, and very little if any of it can be said to be of interest to the general public. The court declared that the publication was not a newspaper in contemplation of the constructive service statute.

As set forth in the syllabus (No. 4), the court held: "The term 'newspaper' as used in our constructive service statute must have reference to some publication appearing at daily or weekly intervals, reporting the news or happenings of local or foreign interest, or both, such as social, religious, political, moral, business, professional, editorial, and other kindred subjects intended for the information of the general reading public." We think the attributes of a newspaper which are thus enumerated furnish the test to be applied in determining the question of whether a particular periodical comes within the purview of a statute requiring the publication of legal and judicial notices in some newspaper. The reason for this becomes apparent, when it is considered that the object of publishing such notices is to give them the widest and most general publicity.

If a periodical can meet the test, the fact that it is published mainly for the benefit and in the interest of a particular class or profession will not deprive it of its character as a newspaper. But the publication under review here does not meet the test, and hence we are compelled to hold that it is not a newspaper within the provisions of our statute requiring advertisements of judicial and legal proceedings and judicial sales to be published in a newspaper.

Defendants filed a plea of estoppel, which was heard and overruled in the court below. Defendants have answered the appeal and asked that the plea of estoppel be maintained.

Section 17 of Act No. 49 of 1877 provides that, when there are two or more newspapers published in the parish, the defendant or the party invested with the direction of the proceedings shall have the right to select the newspaper in which the advertisement is to be made, if applied for within three days after notice, and, if the defendant neglect to choose a newspaper, then the plaintiff has the right, and in case neither make a selection, the sheriff or other officer charged with carrying out the proceeding shall make the selection.

Defendants allege as the basis of their plea of estoppel that William W. McDonald, one of the present plaintiffs, is a practicing lawyer of Shreveport, and, as such, knew that all judicial advertisements appeared in the Daily Legal News, unless publication was requested elsewhere, and that his failure at the time notice of seizure was served in the foreclosure suit to select the newspaper in which the sale of the mortgaged property was to be made estopped plaintiffs from questioning the legality of the sale.

On the hearing of the plea, Mrs. Emm S. McDonald testified that she never saw a copy of the Daily Legal News and never knew that the sale of her property was advertised in that paper. William W. McDonald, called for cross-examination by the defendants, testified that not all, but a majority, of the judi-

cial advertisements in Shreveport appeared in the Daily Legal News. But it was not shown the witness had any personal knowledge that the advertisement of the sale of his wife's property was being carried in that publication. Nor does the record show that the plaintiffs, or either of them, were present when the sale took place.

Defendants' plea is not tenable. Estoppel is not favored by law, and should not be permitted except in clear cases. To justify the plea, it must be certain to every intent, and is not to be sustained by argument or inference. Hornor v. McDonald, 52 La. Ann. 396, 27 So. 91.

For the reasons assigned, the judgment herein appealed from is annulled, and it is ordered that there be judgment in favor of Mrs. Emm S. McDonald and William W. McDonald, plaintiffs, and against the Shreveport Mutual Building Association and T. R. Hughes, sheriff of the parish of Caddo, defendants, decreeing the purported sale by the said sheriff on June 13, 1933, of the property described in plaintiffs' petition, to be invalid, and the inscription of the sheriff's deed confirming the sale is ordered erased from the conveyance records of Caddo parish in Book 315 at page 783.

It is further ordered that the judge of the district court issue an injunction prohibiting the said defendants from attempting to enforce the said invalid sale by dispossessing plaintiffs of the property described therein, and that, in the meantime, the restraining order issued herein be reinstated and remain in full force and effect. All costs of the said sale and of this suit to be paid by the defendant Shreveport Mutual Building Association.