O’NIELL, Chief Justice.
 

 This is an action for damages for slander. The plaintiffs are W. W. McDonald, an attorney at law, and his wife. The defendants are the Shreveport Mutual Building Association (now the First Federal Savings & Loan Association of Shreveport) and Philip Lieber, president of the association. A jury rendered a verdict for the defendants; and the judge gave judgment accordingly, rejecting the plaintiffs’ demand. They have appealed from the judgment.
 

 The incidents from which the suit arose commenced with the foreclosure of a mortgage which the building association held against the residence of Mrs. McDonald. After the association had bought the property at the sheriff's sale in the foreclosure proceedings, Mr. and Mrs. McDonald brought an injunction suit against the building association to prevent being dispossessed of the property. They prayed that the sheriff’s sale should be annulled on the ground that the publication, called The Daily Legal News, in which the notice of sale was published, was not a newspaper, within the meaning of the law requiring newspaper publication of notices of judicial sales. In their suit Mr. and Mrs. McDonald claimed damages for the alleged wrongful seizure and sale of the property; but, on the day of the trial, they dismissed as of nonsuit the claim for damages. On trial of the rule for an injunction, the judge of the district court rejected the demand for an injunction and recalled the temporary restraining order which had been granted. On appeal to this court, the judgment was reversed and the sheriff’s sale to the building association was adjudged null. McDonald et al. v. Shreveport Mutual Building Association, 178 La. 645, 152 So. 318.
 

 In their suit for an injunction and for annulment of the sheriff’s sale, and for damages, Mr. and Mrs. McDonald made some very harsh and hurtful accusations against the building association and its management. The most serious of these allegations were made in the tenth and the eleventh paragraph of their petition, thus:
 

 
 *815
 
 “10. Petitioners show that they are informed, and so believe and allege, that the said defendant has obtained from the Government of the United States in excess of one million dollars for the sole purpose of aiding distressed homeowners; that said loan was made by the Government of the United States exclusively for the purpose of refinancing loans to distressed homeowners and the prevention of foreclosures; that, notwithstanding said fact, the said defendant [building association] has taken said money and, instead of aiding distressed home-owners and refinancing their loans so as to enable them to pay in full for their property, has wantonly, wilfully, maliciously, and illegally used it to oppress and rob and plunder those in distress dealing with them, and to wax rich and corpulent on the misfortunes of their less fortunate fellow-man, all to the shame of every sense of equity and human justice.
 

 “11. Petitioners show that the appeals of the President of the United States, and of state officials, for forbearance in these times of unparalleled economic distress, have been by said defendant [building association] treated with the utmost disregard, derision and contempt, and that, instead of forbearance, said defendant has foreclosed in scores of instances without mercy upon helpless home-owners since January 1st, 1933, and the foreclosure upon petitioners’ property is a part of their wilful, mercenary, brutal and unlawful scheme to acquire all the property they possibly can at the expense of others, and build their fortunes upon the misfortunes of embarrassed and distressed humanity.”
 

 Mr. Lieber, as president of the building association, called a meeting of the stockholders, to be held in a theater in Shreveport, on the fifth day after the decision in the injunction suit was rendered by the judge of the district court. The purpose of the meeting was that Mr. Lieber might deny the accusations made by Mr. and Mrs. McDonald in their injunction suit, and, by explaining that the officers and directors of the association were faithful, honest, and efficient in their management of the affairs of the association, might allay the fears and dispel the unfavorable impression which the accusations might have instilled in the minds of the stockholders. As there were more than 5,500 stockholders, it was necessary to hire a hall, so to speak, in order to accommodate the gathering. Only stockholders of the association, and special guests having a peculiar interest in the subject to be discussed, and representatives of the press, were invited to attend the meeting. Approximately 2,000 stockholders attended, besides the managing executive of the United States Building & Loan League, and the assistant state bank commissioner, who has charge of the building and loan association department of the office, and newspaper reporters.
 

 It is charged by Mr. and Mrs. McDonald in the present suit that the meeting of the stockholders of the association was called “for the wilfull, malicious, deliberate and unlawful purpose of slandering and defaming petitioners [Mr. and Mrs. McDonald], and to hold them up to public ridicule, scorn, hatred and contempt,” and that, for
 
 *817
 
 that purpose, Mr. Lieber, in addressing the meeting, made the following statements, which were published in a daily newspaper of large circulation, viz.:
 

 “He [Mr. Lieber] referred to the recent suit brought against the association by W. W. McDonald, attorney, whose home was foreclosed. ‘The facts in that case are available on our books/ he related. ‘Mr. McDonald has been a client since 1920, or thirteen years. His original investment was $4,000. We twice refinanced him. He quit making payments and was nine months behind when we foreclosed. In thirteen years he reduced his debt only $1,000, or about $80 a year. But Mr. McDonald can have his house back if he will pay a few back installments and promise to keep up future payments. He can get it back tomorrow at cost on those terms. The truth of the matter is, however, that his suit was brought to foment prejudice against every thrifty person in Shreveport; he was suing the association; he was suing 6,000 members. When communism strikes at us it hits every dollar you’ve invested. It’s an attack upon your pocket’ ”
 

 It is contended by Mr. and Mrs. McDonald that Mr. Lieber’s reference to communism characterized their suing the building association as an act of communism, and injured the reputation of Mr. and Mrs. McDonald socially, and his reputation professionally.
 

 The defendants in this suit admit that the newspaper publication of that part of Mr. Lieber’s address which is complained of was substantially accurate, except that the reference to communism was not so connected with the reference to the Mc-Donalds’ suit against the building association as to characterize it as an act of communism.
 

 It is not necessary to give an opinion here as to whether it would have been slanderous if Mr. Lieber, in his address, had characterized the McDonalds’ suit as an act of communism. The entire address was typewritten and was read by Mr. Lieber to the audience, and is in the record. The reference to communism was made by way of comparison, in referring to the danger of provoking or encouraging popular prejudice against the financial institutions, such as building and loan associations, in their financial crisis. The McDonalds were not characterized as communists, nor was their suit against the building association characterized as an act of communism. The purpose and purport of Mr. Lieber’s address was to assure the stockholders of the building association, of which he was president, that the business of the institution was being well and faithfully managed, and that there was no such abuse on the part of the officers of the institution as was charged in the suit of Mr. and Mrs. McDonald. The evidence in the record overwhelmingly refutes the harsh criticism and accusations which were made in the suit brought by Mr. and Mrs. McDonald for an injunction, for annulment of the sale of their property, and for damages. In fact, the criticism and accusations were, for the most part, irrelevant. For that reason, if for no other, there was no injustice in Mr. Lieber’s expressing his opinion, publicly,
 
 *819
 
 that the suit which Mr. and Mrs. McDonald had brought against the building association was brought for the.purpose of fomenting prejudice against the association and its membership. That part of Mr. Lieber’s address, obviously, had reference to the severe and unjustified accusations which were made in the McDonalds’ suit against the association. It was the right and the duty of Mr. Lieber, as president of the building association, to defend it against’ unjust criticism, so long as he did not go out of bounds in condemning and resenting the harshness and the impropriety of the criticism.
 

 The judgment is affirmed.