HIGGINS, Justice
 

 (concurring).
 

 Mr. and Mrs. William W. McDonald sued the Shreveport Mutual Building Association and Philip Lieber, in solido, to recover damages in the sum of $100,000, said to have been sustained as a result of alleged malicious slander on- July 12, 1933, in calling them “Communists,” and saying that plaintiff instituted a certain annulment and injunction proceeding against the association “for the purpose of fomenting prejudice against every thrifty person in Shreveport”
 

 The defendants denied that Mr. Lieber called plaintiffs “Communists,” and pleaded the truth of the statement about fomenting prejudice.
 

 Plaintiffs requested a trial by a jury, and a verdict was rendered in favor of the defendants on a vote of 9 to 3.
 

 Plaintiffs- appealed.
 

 Assuming that calling a person a “Communist” is slanderous, a view most favorable to the plaintiffs, but without deciding that issue, I shall now consider the first defense :
 

 The Shreveport Mutual Building Association has several thousand stockholders. The plaintiffs borrowed $4,000 from the association, and, having become delinquent on several payments, the mortgage was foreclosed and the property was sold. Plaintiffs filed a suit to have the sheriff’s sale annulled on the ground that the newspaper in which the advertisement was published was not a legal newspaper, and prayed for a writ of injunction to restrain the association from disposing of the property. There was judgment in favor of the defendant, and the plaintiffs appealed.
 

 This court set aside the judgment of the lower court and annulled the sale, holding that the newspaper was not a legal publication. McDonald v. Shreveport Mutual Bldg. Ass’n, 178 La. 645, 152 So. 318.
 

 In their petition for the nullity of the sheriff’s sale, plaintiffs charged that the Shreveport Mutual Building Association illegally and unfairly manipulated their account to make it appear that they were indebted to the association, when, as a matter of truth and fact, they were not; that, while the association had obtained from the United States government over $1,000,000 for the purpose of aiding distressed home owners, that the defendant, instead of refinancing the loans, “wantonly, wilfully, maliciously and illegally used it (the money) to oppress and rob and plunder those in distress dealing with them, and to wax
 
 *821
 
 rich and corpulent on the misfortune of their less fortunate fellowman, all to the shame of every sense of equity and human justice”; that notwithstanding the appeals of the President of the. United States and the state officials for forbearance “in these times of unparalleled economic distress,” the defendant treated with utmost disregard, derision, and contempt these appeals, and foreclosed upon the property of scores of persons, without mercy, since January 1, 1933, “and their foreclosure upon petitioners’ property is a part of their wilful, mercenary, brutal and unlawful scheme to acquire all of the property they possibly can at the expense of others, and build their fortunes upon the misfortunes of embarrassed and distressed humanity.”
 

 In order to offset the effect of these charges, Philip Lieber, the president of the association, called a meeting of the shareholders at the Strand Theater in the city of Shreveport on the night of Wednesday, July 12, 1933, five days after the decision of the Caddo district court in favor of the association in the annulment and injunction suit, and addressed about 2,000 persons assembled. It was in this address that plaintiffs claim Mr. Lieber maliciously slandered them.
 

 The following morning, the Shreveport Times, a newspaper in North Louisiana with a daily circulation in excess of 40,000 copies, published a condensed report of Mr. Lieber’s speech.
 

 On the trial of the case, the defendants offered in evidence the typewritten address of Mr. Lieber, which appears on a number of cards, and both he and his secretary testified that it was the identical speech that he wrote and read to the audience. Several prominent people who were in the audience also testified that Mr. Lieber read his address from the cards that he had in his hands.
 

 Mr. Lieber denied that he referred to the plaintiffs as “Communists,” or had any intention of doing so.
 

 Several reputable persons, including Mr. C. B. Williams, reporter for the Shreveport Journal, Mr. W. A. Mabry, member of the Shreveport Bar and president of the Louisiana Tax Payers’ Association, testified that they did not understand Mr. Lieber to refer to the plaintiffs as “communists” and that his statement with reference to “Communism” was disassociated with his reference to the annulment and injunction suit brought by the plaintiffs. A reading of the typewritten address corroborated their testimony, for it • appears that no one could reasonably infer or assume that the remarks with reference to “Communism” were directed at the plaintiffs..
 

 None of the witnesses for the plaintiffs were present when the address was delivered, and they apparently based their testimony upon the digested newspaper report.
 

 We are, therefore, of the opinion that the evidence shows that the defendant did not call or refer to the plaintiffs as “Communists.”
 

 With reference to the statement about “fomenting prejudice,” the defendants overwhelmingly established the fact that
 
 *823
 
 all of the serious accusations contained in the plaintiffs’ petition against the association were wholly unfounded and untrue.
 

 Mr. Morton Bodfish, vice chairman of the board of the Federal Home Loan Bank, of Chicago, assistant professor of economics at North Western University, and managing executive of the United States Building & Loan League, and Mr. W. E. Wood, assistant state bank examiner of the state of Louisiana, in charge of the building and loan associations, who sat near Mr. Lieber and heard his address, testified that the association was conducted and operated in a very efficient, legal, and honest manner.
 

 Mr. J. H. Rowland, president of the Caddo parish school board, and Mr. John Howat, a member of the association’s board of directors and business manager and president of the Carpenters’ Trade Union, stated that it was the uniform policy of the association to assist its debtors in an effort to avoid foreclosure proceedings. .
 

 Mr. Frank E. Murphy, in charge of the department of the association which deals with delinquent borrowers, explained in detail the patient efforts made to keep the McDonalds from becoming unreasonably delinquent in paying their installments.
 

 While plaintiffs charged Mr. Lieber with maliciousness and vindictiveness and a desire to unfairly deprive them of their property, we find in his address, which was delivered a long time before this court. reversed the judgment of the lower court in the annulment suit, a self-explanatory statement which refutes plaintiff’s accusations, to wit:
 

 “ * * * Mr. McDonald has been a client since 1920, or 13 years. We twice refinanced him. He.quit making payments and was nine months behind when we foreclosed. In 13 years he reduced his debt only $1,000 or hbout $80 per year. But, Mr. McDonald can have his house back if he will pay a few back installments and promise to keep up future payments. He can get it back at cost tomorrow on those terms. * * * ”
 

 In short, it was conclusively shown that the serious charges against the association were entirely unjustified. These statements per se show that prejudice would result against the association and those who own paid-up shares therein. Plaintiffs cannot complain if the defendants publicly stated the truth, in order to refute and discredit the rash and imprudent allegations of their petition. Otero v. Ewing et al., 165 La. 398, 115 So. 633; Bayliss v. Grand Lodge of State of Louisiana, 131 La. 579, 59 So. 996; Alloway v. Fitzgerald, 158 La. 54, 103 So. 440; Bigney v. Van Benthuysen, 36 La. Ann. 38; C. S. Burt Co. v. Casey & Hedges Mfg. Co., 107 La. 231, 233, 31 So. 667; Bloom v. Crescioni, 109 La. 667, 33 So. 724, 94 Am.St.Rep. 456; Gilardino v. Patorno, 127 La. 255, 53 So. 556; Pellifigue v. Judice, 154 La. 782, 98 So. 244; McGee v. Collins, 156 La. 291, 100 So. 430, 34 A.L.R. 336; Dimitry v. Levy, 161 La. 11, 108 So. 107.
 

 . For these reasons, and those assigned in the majority opinion, I concur.