This is a suit to collect $366.06 that plaintiff claims defendant owes him, by reason of the facts hereinafter set forth. The district judge rejected his demand and dismissed his suit. He is appealing from that judgment.
[1] Plaintiff owned some timber suitable for making railroad cross-ties, near Grappes Bluff in Natchitoches Parish. He and his son-in-law, L.H. Aaron, made an agreement by which they became either joint venturers or ordinary partners, whereby Aaron would make ties from this timber. From all the evidence, we conclude, as did the district judge, that the agreement was that Aaron would make and haul the ties, and that when sold, whatever was realized over and above the cost of making and hauling them would be divided equally between them.
Aaron made and hauled several hundred ties, most of which he sold to Frost Lumber Industries on three different dates, January 9, 16 and 23, 1943, for a total of $309.14. Frost Lumber Industries inspected and branded the ties when purchased, but did not immediately move them. About that time, Aaron left Natchitoches and went to Pine Bluff, Arkansas, where he stayed for several months, during which time plaintiff did not know his address.
Before Aaron left, probably while he was engaged in making the ties, he borrowed $100 from the Bank of Coushatta. Plaintiff had endorsed the note. When Aaron failed to pay it, plaintiff had to pay it. After Aaron left, plaintiff filed a suit against him in the Justice of the Peace Court. The exact nature of this suit is not disclosed by the record. It was never tried. Later, plaintiff filed suit No. 24617 in district court against Aaron, claiming an undivided one-half interest in the ties and alleging that the $100 borrowed from the bank had been used in making the ties and that the bank had a lien and privilege on the ties, to which he was subrogated when he paid the note. He caused the ties to he sequestered. Attempt was made to serve Aaron in Caddo Parish. The sheriff made return that Aaron could not be found and had moved to Arkansas. Plaintiff then had a curator ad hoc appointed upon whom service was made. The curator filed a general denial and the case was tried and judgment was rendered as prayed for in favor of plaintiff. Writ of fieri facias was issued, and the ties advertised for sale by the sheriff.
At the sheriff's sale on June 2, 1943, plaintiff bought the ties. Frost Lumber Industries was not a party to any of the proceedings by plaintiff against Aaron, but knew of the seizure of the ties and did not attempt to move them. On June 3 plaintiff sold the ties to defendant through its agent, J. Wren, who gave plaintiff a draft on defendant for $366.06, the price of the ties, which was promptly deposited in the Bank of Coushatta. On Sunday after June 3, 1943, Frost Lumber Industries sent its trucks and loaded and moved the ties. Wren saw the ties being moved and notified defendant. Payment was stopped on the draft.
September 17, 1943, plaintiff filed the present suit to collect the amount of the draft. It is defended on the ground that plaintiff was not the owner of the ties when he sold them and could convey no title to them. Plaintiff admits in his brief that he owned only one-half interest in *Page 320 
the ties. Giving full credence to everything plaintiff says in his testimony, this is the most that he ever did own.
Aaron finally came back to Louisiana and appeared and testified in this case. He said he sold the ties to Frost Lumber Industries and that he paid plaintiff $60 in cash as settlement for the ties. However, he contends there was no profit made on the ties and that he paid plaintiff this amount to keep from having trouble with him. He took no receipt for the money. Plaintiff admits that he received $60 in cash from Aaron but claims that it was not for the cross-ties but for another debt.
[2, 3] As said before, we are of the opinion that the agreement was that the profits from the sale of the ties would be divided after sale. However, if they owned the ties together, either of them could sell them and convey a good title, owing the other an accounting. Accordingly, Frost Lumber Industries acquired a good title to the ties from Aaron long before plaintiff filed his suit against Aaron and as Frost Lumber Industries was not a party to that suit, the proceedings therein could have no effect on its ownership of the ties. Therefore, plaintiff had no interest in the cross-ties that he sold to the defendant in this case and could convey no title.
[4] On February 6, 1945, plaintiff filed a plea of estoppel alleging, "That the actions of defendant and its agent in permitting Frost Lumber Industries to move the cross ties in question has estopped defendant from the right to plead lack of consideration for the draft which gave rise to this suit."
Defendant filed a motion to have this plea "expunged" from the record because it was filed too late, and after the case had been submitted for decision, and defendant was not served with a copy. The minutes of the court do not disclose any action on this motion in the lower court. However, the district judge considered the plea of estoppel and overruled it.
Mr. Wren, defendant's agent, testified that he received notice that the ties were being moved, and went up to where the ties were located, arriving as a truck was leaving with the last of the ties. There was then nothing he could do to prevent the ties from being moved — they had already been moved.
Furthermore, we have already decided that the Frost Lumber Industries owned the ties long before plaintiff filed suit No. 24617 against Aaron.
[5] Estoppels are not favored by the law of Louisiana. McDonald v. Shreveport Mut. B. L. Ass'n et al., 178 La. 645,152 So. 318; American F. M. Ins. Co. v. Seymour, La. App., 144 So. 775; Succession of Butterworth, 195 La. 115, 196 So. 39.
The district judge correctly overruled the plea of estoppel.
For the reasons assigned, the judgment of the lower court is affirmed. Plaintiff-appellant to pay the costs of both courts.