Plaintiff brought this suit against New Orleans Public Service, Inc., John Larocca, its employee, and Gertrude Perez, who was allegedly the operator of a Chevrolet automobile which collided with a bus of the public service company at the intersection of Banks and Galvez Streets in New Orleans, on January 21, 1945.
Plaintiff was a passenger sitting in the center of the bus on the right side. She claims that both the bus and the automobile were being negligently operated, and that as a result of the collision she sustained personal injuries and incurred certain expenses amounting in the aggregate to $790 for which she prays judgment in solido against all defendants.
The public service company and Larocca admitted that plaintiff was a passenger in the bus, but they disclaim any negligence on their part, and allege that the collision was caused solely through the fault and negligence of the operator of the automobile, in the following respects: That the automobile was being driven at an excessive rate of speed out Banks Street and failed to stop for the traffic stop sign at Galvez Street; that its driver paid not the slightest attention to the oncoming bus and ran into its right rear side as it proceeded over Banks Street. The other defendant, Gertrude Perez, filed what amounts to a general denial of the allegations of the petition.
The matter was tried in the Civil District Court for the Parish of Orleans, and there was judgment dismissing plaintiff's suit as against the New Orleans Public Service, Inc., and John Larocca. The demands against Gertrude Perez were dismissed as of nonsuit. From this adverse judgment plaintiff has appealed.
Banks and Galvez Streets intersect. The Chevrolet was being driven out Banks in the direction of the lake on the left-hand side of the street; the bus was moving on Calvez towards Canal Street. The collision occurred just as the bus entered the intersection and the Chevrolet hit it near its right rear end. As a result of the impact plaintiff was injured.
Plaintiff insists that the collision was a consequence of joint negligence on the part of the operators of both vehicles. Our appreciation of the testimony, however, is that the accident was occasioned solely and only because of the negligence *Page 883 
of the Chevrolet's driver, in at least two respects: (1) That the car was being driven at forty miles an hour, which is in excess of the speed permitted at the locale of the accident by Ordinance No. 13,702, C. C. S., which regulates traffic on the city streets, and (2) in failing to obey the stop sign at the intersection. The bus had stopped at the signal light on Tulane Avenue and Galvez Street, and after a favorable light change it was driven across Tulane on toward Canal Street. About one hundred feet before reaching Banks, the operator noticed the Chevrolet automobile coming out that street, and he placed it at about three hundred feet away when he first observed it. The bus continued onward and the operator next saw the automobile when it was about fifty feet before reaching Galvez Street, and he judged its speed to be forty miles an hour. The operator stated that he knew there was a stop sign at the intersection warning traffic proceeding on Banks to come to a stop before attempting to cross Galvez, but at the time he noticed the automobile when it was fifty feet away from him, he realized that it would not be able to make the stop at the corner, and that a collision was imminent. In an endeavor to avoid being struck by the Chevrolet, the operator of the bus accelerated it and swerved to his left, but notwithstanding this maneuver the collision occurred.
[1] Under the above state of facts, we fail to see how the bus driver was at fault, as he knew of the stop sign at the corner, and it cannot be said that he should have anticipated that the Chevrolet's driver would flagrantly ignore the stop sign. He had the right to presume that the oncoming Chevrolet would obey the sign. Upton v. Bell Cabs, Inc., La. App., 154 So. 359.
Tina Tarkington, who testified as a defense witness, claims that she was driving the Chevrolet, and that it was moving at about fifteen miles an hour; that just before reaching the intersection she applied the brakes, but they failed to hold and the car crashed into the bus. Her testimony regarding the speed of the Chevrolet is not impressive.
There is question as to the identity of the driver of the Chevrolet. The petition, in article 3, specifically charges that it was being driven by Gertrude Perez, who is one of the defendants, and the answer of this defendant admits the collision but denies the remaining allegations of article 3.
Plaintiff produced no evidence as to who was driving the Chevrolet, and the only witnesses who testified as to that detail were the occupants of the automobile. There were three persons riding in the Chevrolet, namely: Gertrude Perez, Tina Tarkington and Sam Lorber. The bus operator testified that when he reached the Chevrolet after the accident, Tina Tarkington was sitting behind the wheel, with Gertrude Perez next to her, and on the far side of the front seat "the man," evidently meaning Sam Lorber, was sitting. The three occupants of the Chevrolet were unanimous in stating that it had been driven by Tina Tarkington, who was not in possession of a license permitting her to drive an automobile. Police officers were summoned after the collision, but before they arrived the occupants of the car changed places and Gertrude Perez assumed a position under the steering wheel. When the officers arrived Gertrude Perez, in order to shield Tina Tarkington from a possible criminal prosecution, represented to them that she had been the driver of the car, and their report concerning the accident contained that statement. These officers were not produced as witnesses, but by agreement of counsel it was stipulated that had they been present their testimony would have been to the effect that Gertrude Perez made the statement to them that she, Gertrude Perez, had been driving the car.
Plaintiff's counsel, both in brief and orally, argues that Gertrude Perez, because of her statement to the police officers that she had been the driver of the Chevrolet, is equitably estopped from repudiating this statement which she had represented as being the truth. In support of that contention counsel cites certain passages from Corpus Juris Secundum, and also several cases from this and other jurisdictions, which we deem inapposite here. He advances the theory that plaintiff was induced by the Perez woman's statements *Page 884 
not to file suit against any other party, and that in fact she could not have done so, because she relied upon, and had the right to rely upon, the statements, and possessed no other means of ascertaining the identity of the Chevrolet's driver.
We cannot agree with counsel. A careful reading of article 3 of the petition and the answer thereto of Gertrude Perez discloses that this defendant unequivocally denied the allegation that she had been the driver of the car.
[2] There are several reasons why the doctrine of estoppel cannot be successfully urged by plaintiff in this case. The plea of estoppel was only raised by plaintiff in brief and in argument, and in order to be effective such plea should have been specially made. Our brothers of the First Circuit, in the case of Ribundo v. Kemp, 12 La. App. 512, 126 So. 577, 578, had under consideration a case somewhat similar to the one we now consider. In that case the owner of a motor truck sued the alleged owner of an automobile for damages sustained in a collision between the two vehicles. The automobile was attached and held to satisfy plaintiff's claim for damages under C. P. art. 240, which authorizes attachment against nonresident debtors. The defendant, Kemp, appeared by counsel and bonded the attachment, and further appeared through counsel and answered denying that she was the owner of the car. Plaintiff contended that defendant was estopped by her acts and pleadings from urging such defense, and that she must be regarded as the owner of the automobile and responsible for the negligent manner in which it had been driven. The court, in denying the plea, said:
"In order to have urged estoppel against Miss Kemp on account of her acts and pleading, plaintiff following her answer should have filed a plea of estoppel against her. The record contains no plea of estoppel. It is not sufficient to merely urge in argument that she is estopped.
"In Heirs of Wood v. Nicholls, 33 La. Ann. 744, the court said" 'The defendant, urging that plaintiffs cannot assail the legality of the sale because they have ratified it, should have specially pleaded the estoppel and cannot set it up under the general issue. Such defense is analogous to that of payment, release, novation, etc., and must be specially pleaded.' Thomas v. Blair, 111 La. 678, 35 So. 811, and Hebert v. Champagne,144 La. 659, 81 So. 217, are to the same effect. Not only that, but when defendant tendered parol evidence under her answer, that she was not the owner nor the driver, nor responsible for the driving, it was received without objection."
[3] Moreover, estoppel is not favored by the laws of Louisiana and should not be maintained except in clear cases, and in order to justify its application the plea must be made certain to every extent and is not to be sustained on argument or by inference. Penny v. Gross Janes, La. App.,25 So.2d 318; McDonald v. Shreveport Mut. Bldg. Ass'n, 178 La. 645,152 So. 318; Hornor v. McDonald, 52 La. Ann. 396, 27 So. 91.
[4, 5] The doctrine of estoppel has been said to be somewhat of a "superlaw," arbitrary and penal in nature and character, and it should be applied with great care and caution in each case. 31 C.J.S., Estoppel, § 63, page 250. It is not a cause of action and cannot give or create one, its purpose being to preserve one already acquired. 31 C.J.S., Estoppel, § 63, page 251.
[6, 7] Those to whom the representations were directed, and whose conduct they were intended to and did influence, are the persons who may take advantage of the plea. 31 C.J.S., Estoppel, § 63, page 249. Estoppel cannot be invoked unless the person pleading it relied upon, or had the right to rely upon, the representations or conduct of the person sought to be estopped. 31 C.J.S., Estoppel, § 67, page 267.
[8] In a case such as the instant one, involving an action in tort, we cannot see where the defendant, Perez, owed the duty to the plaintiff of not making an untruthful statement to the police officers whose duty it was to report the accident. The doctrine of estoppel, even if it had been properly pleaded, could not, we think, apply here, for under the circumstances of this case none of the parties involved in the accident were relieved of the care of *Page 885 
making an investigation and ascertaining the facts materially necessary to the successful prosecution of a suit in tort. There was no contractual relationship between Gertrude Perez and the plaintiff, and it certainly cannot be said that the statements of the former induced plaintiff not to sue the actual owner of the automobile, as we know of no right which plaintiff had under the law to warrant her supine reliance upon them.
We fail to find error in the judgment appealed from, and for the above reasons it is affirmed.
Affirmed.