## DOW v. BROWN et al.

### No. 6003.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 3, 1939.

Cawthorn & Golsan, of Shreveport, for appellant.

Jackson & Mayer, of Shreveport, for appellees.

TALIAFERRO, Judge.

The automobiles of plaintiff and of defendant, Brown, while being operated by them respectively, collided in the intersection of King's Highway and Mansfield Road in the City of Shreveport at about the hour of ten o'clock A. M., August 21, 1938. This suit followed.

Plaintiff sues for damages for the physical injuries sustained by him in the collision, for loss of time from his business,

and for the amount of damages done his automobile. He impleaded the American Mutual Liability Insurance Company, carrier of public liability insurance on Brown's car, and Brown's employer, the Frost Lumber Industries, Inc.

Mansfield Road and Kings Highway, at the intersection, are each 30 feet wide between curbs. The former runs slightly east of north; the latter's course there is practically east and west.

Plaintiff was traveling northerly on the road. Brown was going westerly on the highway. Traffic on neither, by local law nor regulation, has a right-of-way over the other. The collision occurred in the northwest corner of the intersection. The left front part of Brown's car struck plaintiff's coupe about its right fender and wheel. The impact was heavy.

Plaintiff charges Brown with sole responsibility for the accident, in that he was operating his car in a careless and negligent manner, particularly in these respects, to-wit: (1) Speed in excess of legal limit; (2) Failure to keep a proper lookout; (3) Failure to stop at the intersection when not on a right-of-way street; (4) not observing a stop sign at the intersection.

Defendants admit that Brown, at the time of the accident, was in the employ of the Frost Lumber Industries, Inc., and was on a mission for it. All defendants deny that the accident was due, to any extent, to Brown's negligence, and, in amplification of this defense, aver that Brown, as he drew near the intersection, slowed his car down to a speed of not over two miles per hour, shifted into second gear, looked carefully in both directions, and seeing no cars approaching the intersection, drove slowly into it in a careful and prudent manner; that after the front end of his car had passed the center of the intersection, plaintiff, proceeding at a reckless and excessive speed, suddenly attempted to turn his car in front of the Brown car, and, in the effort, ran into that car; that the sole cause of the collision was the negligence of plaintiff in the respects mentioned. In the alternative, plaintiff's negligence is pleaded in bar of recovery by him.

There was judgment for plaintiff, but on rehearing plaintiff's demands were rejected and he brings appeal.

Plaintiff admits that he was traveling at about 30 miles per hour as he approached and entered the intersection. He testified that when approximately 25 feet from the intersection, he looked to the right and observed Brown approaching some 50 feet from the intersection at a rapid rate of speed, and that he, Brown, did not stop before entering it. He further testified, "* * * when I saw him I knew it was very dangerous; I thought 'If that man don't stop, I don't know what will happen.' Of course, I say to myself, 'It is his duty to stop.'"

He is sure that his car entered the intersection before Brown's did; that he was, at all times, on his side of the road and did not deviate his course before the collision.

Brown testified that he brought his car almost to a stop at the intersection, looked both ways for traffic, and observing none, shifted to second gear and then drove forward slowly until the collision occurred. He was unable to account for his failure to observe plaintiff's car, which was evidently in plain view to his left, not a great distance away. In fact, he did not see it, he says, until a nonappreciable time prior to the impact. He attempted to corroborate his testimony that he nearly stopped at the intersection by that of an occupant of a moving automobile on the Mansfield Road more than 100 yards north of the intersection, but we do not think this witness was in a position at the time to clearly see across the intervening space between her and the defendant and to accurately judge of his movements prior to his attempt to cross the road. She says defendant came to a dead stop before entering the intersection. Defendant, himself, does not claim to have done this.

Defendant's car rammed plaintiff's when at a speed, we are certain, much greater than he could have attained had he nearly stopped at the intersection as he claims. The nature of the injuries to each car and the fact that plaintiff's coupe was knocked several feet westerly into and against a light pole just outside the curb, where it rested, unquestionably negatives defendant's contention on this score. In addition to this, we are satisfied the skid marks, some 12 feet long, testified to by one disinterested witness, were impressed upon the hard surface by the tires of defendant's car when the brakes were applied; after he knew a collision was inevitable.

From a careful consideration of all the testimony in the case, we conclude that defendant did not stop at the intersection.

There is no testimony whatever in the record, after rejecting that of defendant on the question of stopping, to indicate how fast he was traveling as he entered the intersection, save that of plaintiff, who says he was making from 40 miles to 50 miles per hour.

If plaintiff is correct in his estimate of the distance he was from defendant when he first saw him, to-wit, 50 feet east of the intersection, at which time, he, himself, was 25 feet therefrom, he traveled between 45 feet and 55 feet to the point of impact while defendant was traveling not over 65 feet. If this be true, defendant's speed was not more than 30 per cent faster than that of plaintiff when the accident occurred.

Plaintiff is certain he was on the right hand side of the road when he saw defendant. He made no effort to stop his car or reduce his speed, but must have instantly veered at an angle of nearly 45° to his left, because the collision occurred in the northwest corner of the intersection in defendant's lane of travel. Moving no faster than he says he was, he should have been able to stop his car before crossing defendant's lane of travel, after discovering his presence.

We think, in fact are convinced, that this accident occurred because each party assumed he could cross the intersection safely; that is, each took the chance open to him to cross over. This is not an uncommon gamble by motorists. But defendant had the right of way and held it throughout, unless forfeited by him for reasons fixed by law.

Rule 11 (a) Sec. 3 of Act No. 286 of 1938, known as the "Highway Regulatory Law", provides: "When two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way. The driver of any vehicle traveling in an unlawful, improper, reckless or dangerous rate of speed or manner shall forfeit any right of way which he might otherwise have hereunder."

All persons are presumed to know the law. Plaintiff must be held to have known that west bound traffic on Kings Highway at the intersection, has a superior right primarily to enter it, over north bound traffic on the Mansfield Road. This being true, it was his duty to have either stopped at the intersection or to have brought his car under such definite control as to be able to stop it instantly if conditions were such as to require that action. He did not have the right to heedlessly approach the intersection at a rate of speed so great as to prevent him from stopping before entering it, if such became necessary because of nearby traffic on the right-of-way street. It was negligence on the plaintiff's part to do that which he admits he did.

We thoroughly considered this identical question in Carkuff v. Geophysical Service, 179 So. 490, 491, and held: "A bus driver who knew that he was on an inferior road approaching an intersection with a superior road had a legal duty to stop, look, and listen before crossing."

The same principle is discussed in Meredith v. Arkansas Louisiana Gas Co., 185 So. 498, 503, recently decided by this court, wherein we said: " * * * As we have shown, it is the statutory duty of a driver of a motor vehicle when approaching a road intersection to look out for and give way to vehicles simultaneously approaching on his right. No such duty is imposed upon a driver as to vehicles approaching on his left. The driver of such a vehicle, if he is traveling within the speed limit and on the right-hand side of the highway, may proceed on his course without being guilty of a charge of negligence. This was the situation here. The appellant and the respondents were simultaneously approaching the road intersection. The appellant was on the right of the respondents; he was traveling on the right-hand side of the way, and was traveling within the statutory speed limit. He had the right to presume that the respondents would give heed to the statutory rules of the road, and not drive their car across the road immediately on his front."

It is urged that defendant forfeited the right of way accorded him by law, by traveling at an "unlawful, improper, reckless and dangerous rate of speed", as he entered the intersection. Due to the paucity of testimony on the point, we are not prepared to hold one way or the other thereon. We do not think it necessary to do so in order to properly pass on the merits of plaintiff's case.

If we should hold against defendant on this point, the result would inevitably follow that the concurring negligence of both parties precipitated the accident, the negligence of each being a proximate cause thereof. The penalty in such a case, to be visited upon the one forfeiting his right of way, is the loss of the right to hold the

other party in damages for the collision and its results; not to absolve such other party from the gross negligence of which he is guilty by heedlessly trying to negotiate the intersection regardless of traffic conditions thereabout, and, therefore, not exercising ordinary prudence to determine for himself if it was safe to attempt to pass through the intersection.

It is also urged that plaintiff first entered the intersection, and that, therefore, the rule of pre-emption applies; that defendant should have respected plaintiff's superior right resulting from prior entry. It may be that plaintiff's car entered the intersection a split second prior to defendant's, but if so, it was at a time and at such speed that made it impossible for defendant to have abstained from entry thereon himself, even though he had observed plaintiff's position and movements. One may not heedlessly rush into an intersection, regardless of traffic conditions thereabout, and then claim the benefits of the pre-emption rule.

Being of the opinion that plaintiff's own negligence contributed to the accident and was a proximate cause thereof, he is barred from recovery, even though it should be held that defendant was also negligent.

Judgment appealed from is affirmed with costs.