## GOUGH et ux. v. NEW ORLEANS PUBLIC SERVICE, Inc.

### No. 16130.

Court of Appeal of Louisiana. Orleans.

May 31, 1937.

George E. Konrad and H. W. & H. M. Robinson, all of New Orleans, for appellants.

Ivy G. Kittredge, of New Orleans, for appellee.

McCALEB, Judge.

Mr. and Mrs. Watkins Gough filed this suit against the New Orleans Public Service, Inc., seeking to recover damages for injuries received by Mrs. Gough on January 11, 1934, when an automobile in which she was a passenger collided with one of the street cars of the defendant at the intersection of Marengo and Freret streets in the city of New Orleans. They charge that the accident was caused through the fault of the motorman of the street car, in that he was proceeding down Freret street at an excessive rate of speed in violation of the traffic ordinance of the city of New Orleans; that he failed to reduce the speed of the car upon arriving at the intersection of Freret and Marengo streets and did not have it under control; and that he did not sound the bell or give any warning to indicate his approach.

The defendant admits that the accident happened at the time and place set forth in the petition, but claims that the impact was occasioned solely through the imprudence of the driver of the automobile in which Mrs. Gough was riding and that it was free from fault in the premises. Alternatively, it pleaded the contributory negligence of Mrs. Gough in detail.

After trial on the merits, the district judge found for the defendant and dismissed the plaintiffs' action. Wherefore this appeal.

The scene of the accident was the intersection of Marengo and Freret streets. Freret street is a paved two-way thoroughfare, approximately 32 feet wide, extending from the business or downtown section of New Orleans to what is commonly known as the uptown section. The middle of the roadway is covered by two sets of tracks, over which the defendant company operates electric street cars. The lakeside tracks are used for cars proceeding from downtown towards uptown, and the riverside tracks for cars running in the opposite direction. This street crosses Marengo street at right angles.

Marengo street is also a paved two-way street, 36 feet wide, and runs from the Mississippi river in the direction of Lake Pontchartrain. The vehicular traffic on both Marengo and Freret streets is unusually heavy at this crossing, and the city authorities have designated the intersection as being dangerous. Accordingly, caution signs have been placed at the property line on Freret street at both approaches to the intersection, warning oncoming traffic to check their speed in traversing the crossing. Likewise, on Marengo street, near the property line on either side thereof, there are "stop" signs which require traffic proceeding on Marengo street to come to a full stop at the intersection before attempting to negotiate it.

On the day of the accident, the weather conditions were unfavorable. There was a drizzling rainfall and the streets were wet and slippery.

The automobile, in which Mrs. Gough was a passenger, was a 1927 model Dodge sedan and was being driven by Edwin Hanson, its owner. She was seated in the front next to the driver, and in the rear seat were two other passengers, one Earl Salaun and Eleonore Hanson (a sister of the driver). The car was being driven on Marengo street proceeding in the direction of the river, and the street car was

being operated on Freret street heading downtown or towards Canal street.

The story of the occurrence, as pictured by Edwin Hanson, the driver of the automobile, and concurred in by Mrs. Gough and the other occupants of the vehicle, is as follows:

That he was driving the sedan on the right-hand side of the roadway of Marengo street proceeding in the direction of the river, at a speed not exceeding 15 miles per hour; that, upon reaching the Freret and Marengo street intersection, he came to a complete stop near the property line of the intersection in obedience to the traffic ordinance; that he placed the gear of his car in neutral and looked for traffic traversing Freret street; that he saw no vehicles on Freret street other than defendant's street car which was, at that time, about 300 feet up Freret street or approximately at the corner of Milan street; that, being of the belief that he had ample time to negotiate the crossing, he shifted into first gear and started forward at the slow pace of between two and three miles per hour; that he passed over the uptown street car track, shifted into second, and had just shifted into third gear on the downtown street car track when the right side of his car was struck with violent force by the street car traveling downtown on Freret street; that the street car knocked or dragged his automobile, from the point of the impact, down Freret street past the intersection; and that the automobile finally stopped, with its left wheels over the riverside curbing of Freret street, facing towards uptown about 60 feet from the downtown riverside curbing of Marengo and Freret streets. This witness further states that the gears of his car were hard to shift and that, from the time he saw the street car a block away before he started to cross the intersection, he paid no more attention to it until the collision occurred.

·Contra, the defendant's witnesses portray an entirely different state of facts as to the happening of the accident. The motorman of the street car testifies that he was proceeding down Freret street at a slow speed; that, as he neared the intersection of Marengo street, he retarded the velocity of the street car to four or five miles per hour and sounded his gong in obedience to the danger sign at the intersection; that he saw no traffic at that time and accelerated his speed to 7, 8, or 9 miles per hour; that, as he entered the intersection, he noticed the automobile at a distance of about 100 feet, driving out Marengo street towards the river at a very fast speed, which he estimates at between 30 to 35 miles per hour; that he immediately applied his brakes and did everything possible to avert the collision; that, nevertheless, the automobile came on across the intersection and attempted to swerve to the left; that the right rear side of the sedan collided with the left front vestibule of the street car (breaking the glass thereof), causing the automobile to slide to the left down Freret street; and that it finally stopped with its front and rear wheels on the downtown riverside curbing on Freret street (facing uptown) near the intersection. He further relates that, at the time of the impact, the street car had negotiated approximately two thirds of the intersection; that it stopped within a few feet of the point of collision; and that it was necessary, after the accident, to move it forward inasmuch as it was blocking traffic proceeding on Marengo street. His testimony, respecting the slow speed of the street car, the fact that he sounded his gong upon reaching the intersection, and that the street car stopped almost instantly after the impact, is corroborated by several disinterested witnesses (passengers in the street car) and also by the conductor of the car.

It is apparent, from the foregoing, that the statements of plaintiffs' and defendant's witnesses are hopelessly conflicting.

A reading of the testimony of Miss Alice Kilpatrick and Mrs. R. C. Davis, both of whom were passengers on the street car, is very impressive and fortifies the theory of the defendant as to the manner in which the accident occurred. While these ladies and several other witnesses of the defendant disagree in their estimates of speed and distance, their evidence exhibits the fact that the street car was being operated at a slow rate of speed and that utmost caution was taken by the motorman to prevent the happening of an accident.

Plaintiffs' witnesses would have us believe that the automobile was creeping along at two or three miles per hour while the street car was traveling at a high and unlawful rate of speed, and that the street car negotiated 300 feet while the automobile covered approximately 30 feet. Mrs. Gough and Mr. Hanson also

assert that, although they saw the street car proceeding on Freret street 300 feet away at the time the automobile started across the intersection, they never saw or heard it again until the moment of the impact. These statements can hardly be credible. Even though we were inclined to believe them on this point, we feel that their assertions reflect gross negligence on their part in not observing the street car (a large vehicle of great weight) bearing down upon them and in failing to hear the attendant noise which accompanies its operation.

We conclude that Hanson did not have his automobile under control and did not exercise a proper lookout with respect to traffic traversing Freret street. It seems plain to us that he drove his sedan into the intersection without stopping, looking, or listening; that, when he became aware of the presence of the street car in his path, he made a belated attempt to avoid the accident by veering to the left; and that the impact of the left front vestibule of the street car and the right side of the automobile, on the slippery street, caused the latter to slide in the direction of downtown, turn around, and come to rest at the place described by the witnesses in the case.

The district judge held in favor of·the defendant, and we concur in his ruling.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.