McBRIDE, Judge.
At about 11:20 a. m. on March 28, 1949, a yellow cab, which had been traveling towards uptown on Baronne Street, was struck on the right side, as it attempted to cross the intersection of Terpsichore Street, by an automobile owned and driven by Charles Melito, which was proceeding towards the river on Terpsichore Street. As a result of the collision the taxicab ran into a 1947 Dodge sedan automobile owned by the Salvation Army, which was parked on the river side of Baronne Street about thirty feet above Terpsichore Street, and damaged it to the extent of $258.60. By this suit the Salvation Army endeavors to recover the amount of its damages from Toye Bros. Yellow Cab Company, its component partners, and Charles Melito, all jointly and in solido. The trial below resulted in a judgment in plaintiff’s favor for the above amount against all defendants, but only Toye Bros. Yellow Cab Company and the partners thereof have prosecuted an appeal, which is now before us for consideration.
Plaintiff charges that the accident resulted from the negligence of the drivers of both vehicles, in several enumerated particulars, and, of course, the matter resolved itself into a contest between -the defendants as to which driver was at fault in the accident.
Baronne Street, which is paved, accommodates only traffic traveling in an uptown direction. Terpsichore, which is a one-way paved street for traffic traveling towards the river, intersects Baronne at right angles. It is undisputed that on Terpsichore, facing traffic intending to cross the Baronne Street intersection, there is a sign requiring such traffic to stop before entering Baronne, in accordance with the pro *874 visions of Ordinance No. 13,702, C.G.S., of the City of New Orleans, regulating the movement of vehicular traffic.
The evidence in the record convinces us that the taxicab was traveling at a lawful speed. Melito and a passenger who was riding in his car testified that the cab was speeding at forty miles an hour, but comparing their testimony with that of the driver of the cab, a passenger therein, and three other witnesses, we do not accord any credence to the statements of Melito and his witness with reference to the speed of the taxicab.
Wolfe, who operated the cab, testified that he was driving at about twenty miles an hour, and that as he approached the Terpsichore Street intersection he reduced his speed to about eighteen miles an hour, and that just as he reached about the middle of the intersection the Melito car emerged therein. Wolfe swerved the cab toward the left to avert a collision, but the maneuver failed to accomplish its purpose. The cab was struck in the right center by the front part of the Melito car, the impact causing the cab to veer over and strike the parked automobile of the Salvation Army.
Wolfe’s testimony was substantially supported by a lady who was a passenger in the cab. According to her testimony, the cab was traveling at a speed “about medium, not too fast and not too slow,” which “wouldn’t be more than 20 or 25 miles an hour.”
There is not the slightest doubt in our minds that Melito drove his car into the intersection without paying the slightest heed to the stop sign. The weight of the testimony shows that his car was traveling at about twenty-five miles an hour when it passed the sign.
Besides the testimony of the operator of the cab, that Melito failed to stop, we have the testimony of his passenger and three other witnesses substantiating that fact. One was a housewife who was engaged in the task of sweeping the porch of her residence at the corner. She observed the movements of both cars before the collision, and was most positive that Melito made no stop.
Contrasted to this is the testimony of Melito and the passenger in his car, which, to say the least, is not impressive. Melito’s story is that he stopped, looked down Ba-ronne Street, and saw the approaching taxicab some distance away, and that he then started across the intersection believing he could clear it before the cab arrived. His passenger went further and testified that Melito stopped and “tooted his horn,” and then started forward. Melito’s passenger, while stating that he remembered distinctly that Melito stopped and sounded his horn, did not know whether there was any contact between the Melito car and the yellow cab, nor could he even say whether a yellow cab was involved in the accident. His testimony is untenable.
We have no inkling as to the premise upon which the trial judge predicated the judgment against the owners of the taxicab. Nothing whatever appears in the record to indicate that Wolfe was guilty of any negligence. The cab was being driven at a lawful rate of speed and Wolfe had the absolute right to feel secure in his superior position of a favored street. It cannot be said that he should have anticipated that a motorist on Terpsichore Street would flagrantly and unlawfully ignore the official stop sign and drive into the intersection in the path of the cab. We have said that a driver situated as was Wolfe has the right to presume that motorists on intersecting streets will obey traffic rules. Upton v. Bell Cabs, Inc., La.App., 154 So. 359; Young v. New Orleans Public Service, Inc., et al., La.App., 35 So.2d 881.
In the absence of a showing of negligence on the part of the driver of the taxicab, it follows that the judgment against the appellants must fall.
For the reasons assigned, the judgment, insofar as it runs against Toye Bros. Yellow Cab Company and its members, is annulled, avoided, and reversed, and plaintiff's suit as to these defendants is dismissed at its cost in both courts. And as thus amended the judgment is affirmed.
Reversed in part; affirmed in part.