LOTTINGER, Judge.
This suit arises out of an intersectional collision which occurred in the City of Baton Rouge on December IS, 1949, between the car owned and operated by the plaintiff and a dump truck owned by the defendant Aldon Crain, and insured by the Metropolitan Casualty Insurance Company, the other defendant herein. The scene of the collision was the intersection of North Boulevard and Edison Street. North Boulevard runs east and west and Edison Street runs north and south. Edison Street enters North Boulevard from the south, but does not cross it, and thus there is a “T” junction at the meeting of the streets.
The plaintiff alleges that at about 11:30 A. M. of the morning of the accident, she was proceeding north on Edison Street at about 10 miles per hour and that upon reaching the intersection at North Boulevard, stopped, looked in both directions, and deeming it safe to proceed, turned into the intersection to her left. She alleges that as soon as she had straightened out her car and was proceeding west, she saw the defendant’s truck coming in her direction at a rapid rate of speed. Fearing that the truck would strike her, she turned to her right and brought her car to a stop almost completely off the north side of North Boulevard. She avers further that the driver of the truck, Aldon Crain, suddenly applied his brakes, and that the truck skidded over to its left and collided with her car (which had come to a stop) with such force as to knock it a distance of twenty-five feet, doing considerable damage to the car and seriously injuring her. She prays for the sum of $235 for damages to her automobile and for the sum of $25,-000 for her injuries, pain and mental anguish.
The defendants deny all charges of negligence on the part of Crain and allege that he was unable to see the plaintiff as she approached the intersection because of some telephone company equipment which was located on the west side of Edison Street, just south of North Boulevard. It is further alleged that he was driving at a lawful rate of speed on the street having the right of way and that the accident was caused by plaintiff’s emerging from behind the telephone equipment and into North Boulevard ¡before ascertaining that she could proceed safely. In the alternative defendants plead contributory negligence on the part of the plaintiff as a bar to her recovery. There is no dispute as to the liability coverage of the defendant insurance company.
The trial judge in a written opinion found for the plaintiff and allowed her damages in the sum of $219.75, for her automobile and $1750 for her pain, suffering and disability. The case comes to us as a suspensive appeal taken by the defendant, which the plaintiff has answered seeking damages in the amount previously prayed for.
The record supports the trial judge’s finding that due to tall weeds and the telephone equipment, which included a tent some seven feet high on Edison Street, just south of North Boulevard, the intersection was a blind one necessitating that Mrs. Spencer proceed almost to the south side of North Boulevard before being able to get a clear view of approaching traffic. Likewise, due to the aforementioned obstructions, Crain’s view of the plaintiff was equally obstructed. Officer Caldwell of the Baton Rouge police force arrived on the scene of the accident a few minutes thereafter and according to his report the collision occurred six feet north of the north edge of the concrete portion of North Boulevard and three feet west of the west parallel of Edison Street, in front of the residence designated as 4109 North Boulevard. Further, according to this officer’s report, the plaintiff’s car was pushed some twelve feet east as a result of the impact. Skidmarks fifty-seven feet in length were left by the truck.
*418 The defendant Crain, admitted a speed of from twenty to twenty-five miles per hour. Taking into consideration the fifty-seven feet' of skidmarks and the distance the plaintiff’s car was pushed the trial judge concluded, and we think correctly so, that he was going much faster. His speed coupled with the fact that he struck the automobile at a time when it was almost completely off the north side of North Boulevard and to his extreme left, we feel amounts to negligence on his part and we agree with the trial judge in so holding.
The more difficult question concerns the contributory negligence, if any, on the part of the plaintiff. The trial judge observed that she made a poor witness and contradicted herself on several occasions. Further, her testimony at the trial conflicted in some respects with a signed statement she gave an insurance adjuster on January 26, 1950. In spite of this, however, the trial judge concluded that she misstated no facts purposely and due to her age, (almost 60), her nervousness and shock as a result of the accident that her errors were honestly made. We agree with the trial judge’s finding in this respect and agree further that plaintiff stopped at the intersection and did not see Crain until she had entered the intersection. When she did see him approaching at a rapid rate, she did not complete her left turn as contemplated, but in an attempt to avoid a collision continued across North Boulevard and onto the shottlder when she was struck.
In his written reasons for judgment the trial-judge went on to hold:
“The first question arises as to who had the right of way at this intersection. Section 28 of the City Ordinances of the City of Baton Rouge provides as follows:
“ ‘A. When two drivers approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way, provided, however, the driver of any vehicle traveling at an unlawful, reckless or dangerous rate of speed shall forfeit any right of way which he might otherwise have hereunder.
“ ‘B. The driver of a vehicle approaching, but not having entered the intersection, shall yield the right of way to a vehicle within such intersection or turning therein to the left across the line of travel of such first mentioned vehicle.’ ”
Since Mrs. Spencer entered the intersection first it would appear that under the above quoted section of Traffic Ordinances of the City of Baton Rouge that she had the right of way and that the truck driver should have allowed her to proceed and continue to make her turn. The question then arises whether even having the right of way she should have seen the truck approaching and waited for it to pass before proceeding out into the intersection. The law of this state requires one approaching an intersection where his view is obstructed to use special caution and to have his car under such control without regard to the question of the authority of right of way as to ibe able to stop quickly and to keep a vigilant outlook. See Cyclopedia of Automobile Law and Practice, Blashfield, Section 1041. Furthermore, the driver of an automobile is charged with the responsibility of seeing what should have been seen and his failure to see constitutes negligence. See Hirsch v. Kendrick, La.App., 43 So.2d 692. Therefore, in the present case, Mrs. Spencer is charged with the responsibility of having seen the truck approaching from her left and it matters not whether she actually saw it. However, a motorist approaching a street intersection is entitled to assume in the absence of anything appearing in the conduct of the other driver inconsistent with the assumption, that the other automobile is approaching the intersection at a lawful rate of speed and under control, and that the other driver will conduct himself as a reasonably prudent driver would under like circumstances. See Vol. 2, Blashfield, Cyclopedia of Automobile Law and Insurance, Section 1026. Also, see Fulmer v. United States Fidelity & Guaranty Company, La.App., 5 So.2d 923.
“The question then arises if Mrs. Spencer had seen the truck approaching if there was anything in its appearance which would *419 cause a reasonably prudent driver to remain there or would such a driver have proceeded on out into the intersection to make the left turn as she did. The truck driver, as heretofore shown, testified that he was only going 20 to 25 miles per hour. If this be true, then there would not necessarily have been anything in the appearance of the approaching truck which would cause one to think it dangerous or unsafe to proceed on out into the intersection, particularly where one had the right of way as did Mrs. Spencer. She says that when she saw the truck it appeared to be approaching at a high rate of speed of 50 to 55 miles per hour. However, since she did not see the truck until it was bearing down on her, it is easy to understand how she could feel that the truck was coming at her at a very high rate of speed.
“Based on the physical facts, the testimony of Mrs. Spencer and that of the driver, the court is of the opinion that the speed of the truck was faster than the driver sought to explain, his long skid marks and his moderate speed by saying water on the street caused a lack of traction on one side. An examination of the street shows he was in error about this for it is a cement slab with a well defined crown so water couldn’t possibly have stood on the left and not also covered the right hand side of the road.
“Taking all of this into consideration the court is of the opinion that the proximate cause of this accident was the excessive speed of the truck and the failure of the driver to have it under proper control. If it had not been for this negligence he could have easily passed to the rear of the Spencer car. In other words, Mrs. Spencer’s negligence in not seeing the truck before she entered the intersection did not contribute to the proximate cause.
“Able counsel for defendants points out that plaintiff was making a' left turn and that the statutory requirement of the Highway Regulatory Act, as well as the City Ordinance, ‘makes it the duty of one making a left turn on highways of this state to yield the right of way to approaching traffic in either direction and not to make the turn unless the - way is clear. * * * ’ This Court is of the opinion that this statutory requirement, as well as the jurisprudence requiring drivers to exercise a high degree of caution before making a left turn, has no application where the driver is making a left turn at a street intersection, but that the specific section of the Traffic Ordinances above quoted controls.
“They also rely on the cases like Vidrine v. Fontenot, La.App., 49 So.2d 428, which held that even where a plaintiff having the right of way approaches an intersection and sees another vehicle likewise approaching it at a highly excessive rate of speed, he is contributorily negligent if he proceeds on into the intersection in the face of such apparent' danger.
“This court is likewise of the opinion that these cases are not apposite to the present facts. Mrs. Spencer here could not, due to this being a blind corner, see the truck approaching until she was actually entering the intersection. Thus, unlike the drivers in these cases, she did not have full notice of the emergency being created by the defendant. A case more apposite is General Exchange Insurance Corporation v. Kean’s Co., Inc., La.App., 184 So. 410, 411, where among other things Judge Dore as organ of the court of appeal of this Circuit said: “It is true that Clements says he did not see the truck until he was about in the middle of the intersection and that the truck was then about forty feet away. If this is true, there is still nothing to show any negligence on his part as in that case he was in the middle of the intersection before the truck reached it. If Clements was negligent in not seeing the truck sooner, it is clear that such negligence did not have anything to do with the accident, as he would have had the right to proceed across the intersection, having entered it first, and having no occasion to stop his car to let the truck, pass in front of him as he was almost across when struck.”
“The damages to plaintiff’s automobile were $219.75. The plaintiff’s physical injuries were not particularly serious, but were very painful due to her age and a pre-existing condition of arthritis. Dr. Ashton Robins, treated the plaintiff and he *420 testified that he saw plaintiff at the hospital on the same day that she was injured and that he found her suffering from a fracture of the third and fourth ribs with marked pain and suffering in that left chest, a rather deep contusion of the left parietal region of the skull and with bruises on her left shoulder and arm and on her left side. She stayed in the hospital for five days and then was in bed at her home for some time. He discharged her on February 17, 1950, as cured, but subsequently she has had considerable pain, especially in the left arm and he attributes this probably to traumatic arthritis. He says that she has had considerable improvement recently. The x-rays reports introduced in evidence by the plaintiff show general hypertrophic arthritis in the plaintiff’s elbows, shoulders and knees. Dr. Williams, who made the x-rays, an expert radiologist, testified that the arthritis was about the same in the right and left shoulder. The plaintiff makes no claim for permanent injuries, at least her counsel so informed the court and opposing counsel at the pre-trial conference, specifically stated that he was making no claim for permanent injuries, but that he was reserving the right to file another suit to make such a claim. This pre-trial conference was held October 27, 1950.
“The court is of the opinion, however, that the plaintiff has suffered considerable pain as result of the pre-existing arthritic condition which she had. In other words, had she been a younger woman and free from arthritis undoubtedly the physical injuries which she sustained would have more or less been of minor consequence. However, due to the arthritic condition and her age she has had a great deal more of disability and pain and discomfort than would have otherwise been the case.
“Under these circumstances the court is of the opinion that an award of $1750.00 would do justice in the premises, for the pain and suffering and disability incurred by the plaintiff.”
A careful reading of the record convinces us that the findings of fact and law by the trial judge, as quoted above, are correct and we adopt them as our own.
It will be noted that the trial judge allowed plaintiff, a married woman, to collect damages for the automobile, which would presumably be community property. The record establishes however, that this vehicle was purchased with cash representing the proceeds of her deceased son’s war risk insurance policy in which she was the named beneficiary and that same was registered in her name and regarded by her husband as her own personal property. Under these circumstances, we are convinced that the car was separate property and plaintiff entitled to recover for damages to same.
Finding no manifest error on the part of the trial judge, and for the reasons assigned above the judgment appealed from is affirmed at cost of appellants.
Judgment affirmed.
ELLIS, J., dissents.