JANVIER, Judge.
At about 8:10 o’clock on the night of September 3, 1948, there was an automobile collision at the corner of Prytania and St. Mary Streets, in New Orleans. The cars involved were a Ford Tudor Sedan owned by Tide Water Associated Oil Company and operated by one of its employees, Oren D. Gibbons, and a taxicab owned by Toye Bros. Yellow Cab Company, a partnership, which taxicab was being operated in the course of his employment by Floyd Donahue, an employee of the said partnership.
It was a rainy night, which is referred to by counsel for both parties as the night of the “second hurricane”. Gibbons, in the Ford, was on his way out St. Mary Street *175 from the direction of the Mississippi River towards St. Charles Avenue, and the taxicab, in which Philip Chuter was a passenger, was on Prytania Street going in a downtown direction. As Gibbons, in the Ford of plaintiff, approached Prytania Street, on the sidewalk to his right there was a sign which read: “Slow — Dangerous Corner — 15 MPH”. The City traffic ordinance No. 13702 C.C.S. is in evidence but, except for such right as may have been due to the taxicab by reason of the fact that this “slow” sign was on St. Mary Street facing the Ford, neither street was given any superior rights over the other.
The two vehicles met somewhere in the intersection, the taxicab striking the left side of the Ford at or near the left door.
The Tide Water Associated Oil Company, owner of the Ford, brought this suit against defendants, Toye Bros. Yellow Cab Company, and the individual members of the said partnership, alleging that the accident had resulted solely from negligence of Donahue, the operator of the taxicab, in driving the taxicab at a reckless and unlawful rate of speed; in failing to keep a proper lookout, and particularly in failing to accord to plaintiff’s Ford “the right-of-way to which it was entitled since it had preempted the intersection, after slowing down in compliance with the ‘Slow1 sign there.” Plaintiff corporation prayed for judgment for $244.38 which is admittedly the cost of repairing the damage sustained by the Ford.
The defendant partnership and the individual members thereof denied that there had been any negligence on the part of Donahue, the operator of the taxicab, and alleged that the accident had resulted solely from the negligence of Gibbons in failing to accord the right of way to the taxicab; in failing to have the Ford under proper control; in failing to maintain a proper lookout; in failing to reduce the speed of the Ford, and in driving while under the influence of intoxicating liquor.
The defendants also alleged that before plaintiff filed this suit against them, they had brought suit against the public liability and property damage insurer of the plaintiff company to recover for the damage sustained by the taxicab belonging to them.
Defendants specially pleaded contributory negligence of Gibbons.
From a judgment as prayed for defendants have appealed.
The only witnesses to the occurrence were the two drivers, Gibbons, who operated the Ford of plaintiff, Donahue, who operated the taxicab, and Chuter who was a passenger in the taxicab.
Gibbons says that, as he approached Prytania Street, he reduced his speed from about twenty-five miles an hour to about ten miles an hour, that he looked up Pry-tania Street and could see for approximately one-half block and that in that half block there was no car which, if it had been approaching at a proper speed could have reached the intersection in time to interfere with his safely crossing it.
Donahue, who operated the taxicab, says that he approached the intersection at about twenty-five miles per hour slightly to the left of the center line of Prytania Street and that when he reached a point so near to the intersection that he could no longer stop, the Ford suddenly dashed out in front of him at a speed of from twenty to twenty-five miles an hour, and that before he could stop the taxicab he crashed into the side of the Ford after swerving to his left.
Chuter, the passenger in the taxicab, says that the Ford entered the intersection at a speed of about twenty to twenty-five miles an hour. He says that the Ford did not “appear” to stop before it entered the intersection though he later said that he had not seen the Ford until about one second before the collision occurred, and that he could not say that it actually had not stopped before entering the intersection.
Both Donahue and Jacobs, an adjuster for the defendants, who arrived on the scene shortly after the occurrence, say that when they talked to Gibbons they smelled liquor on his breath and that he asked them not to say anything about it and said if they did not say anything about it, he would see that the damage to the taxicab was paid for.
*176 The statements that there was liquor on the breath of Gibbons, that he appeared to be slightly under the influence of liquor and that he admitted his negligence are denied by Gibbons, who says that he was not intoxicated at all and that he made no statement whatever admitting his fault. Gibbons did admit that shortly before the accident he had had two drinks and shortly thereafter he said that he had had about “two or three” drinks. He also admitted that immediately after the accident, before any conversation was held, he took an unopened “fifth” of whiskey which was in his car and walked down the street somewhere and hid it. When asked why he did this, he said that it was probably the result of “instinct.”
 A review of the entire record convinces us that there was fault on the part of Gibbons. On such a night as that obviously was, dark, rainy and windy, he should not have entered Prytania Street without making certain that there was no vehicle sufficiently close to endanger his safe passage over the intersection. It is obvious that he did not do this. We think the evidence shows conclusively that the speed of the taxicab was not excessive, and that it was plainly within the view of Gibbons had he been careful in looking up Prytania Street to see that nothing was approaching.
Plaintiff contends that Gibbons had the right of way by reason of the fact that he entered the intersection first and that this is evidenced by the further fact that the collision occurred entirely beyond the center line of Prytania Street. We do not think it can be said that Gibbons had acquired the right of way as a result of having preempted the intersection. The record convinces us that he entered the intersection at a speed in excess of fifteen miles per hour and that he did not carefully look up Prytania Street to see whether any vehicle was approaching. It is true that he reached the point of impact a fraction of a second before the taxicab reached it, but he did so because of his speed in entering the intersection and the result is that it cannot be said that he had acquired the right of way. We discussed such a situation in Sheehan v. Hanson-Flotte Co., La.App., 34 So.2d 657.
It may be that the operator of the taxicab was also at fault. We do not find it necessary to discuss this question since we are convinced that the negligence of Gibbons had causal connection with the unfortunate result.
Accordingly, the judgment appealed from is annulled, avoided and reversed and plaintiff's suit is dismissed at its cost.
Reversed.