68 So.2d 254 (1953)
NEW HAMPSHIRE FIRE INS. CO.
v.
BUSH et al.
No. 8047.
Court of Appeal of Louisiana, Second Circuit.
November 3, 1953.
Rehearing Denied December 2, 1953.
Writ of Certiorari Denied January 11, 1954.
Jackson, Mayer & Kennedy, Shreveport, for appellants.
Morgan, Baker & Skeels, Shreveport, for appellee.
GLADNEY, Judge.
This action by plaintiff insurance company is for damages to the automobile of Mrs. Lula Wingfield, its assured, from whom it secured subrogation to the extent of its payment, $700.39. Mrs. Wingfield's car was involved in a collision with a truck at the intersection of Gilbert and Stoner Avenues in Shreveport, Louisiana, about 12:45 P.M. on July 30, 1951. The truck was being driven by Jackie Addison, an employee of the defendant, J. E. Bush, while acting within the course and scope of his employment. Made defendant also *255 is the Metropolitan Casualty Company of New York, Bush's insurer.
The facts relating to the accident are not seriously disputed and we find they have been fully and accurately set out in the opinion of our brother of the district court, and we herewith repeat his version thereof:
"Gilbert and Stoner Avenues intersect each other at this point at right angles, Gilbert running north-south and Stoner running east-west. Stoner Avenue south of this intersection is 36 feet wide from curb to curb and 40 feet wide from curb to curb north of the intersection. Stoner Avenue is 36 feet wide from curb to curb on both sides of Gilbert. Gilbert is a right of way street by City ordinance. Suspended above the center of this intersection is a traffic light of the `blinker' type which flashes yellow, or amber, for traffic on Gilbert and red for traffic on Stoner. On the side of this light facing traffic on Gilbert is written `Slow', while on the side of the light facing traffic on Stoner is written `Stop'. In addition to the red light and the word `Stop' facing traffic on Stoner, there are large regular octagonal `Stop' signs mounted on uprights some seven or eight feet tall at the curb of Stoner at the northeast and southwest corners of the intersection facing traffic as it moves on Stoner.
"Mrs. Wingfield was approaching this intersection from the south traveling north on Gilbert. Addison was approaching the intersection from the west traveling east on Stoner. As she neared the intersection traveling about twenty miles per hour, Mrs. Wingfield slowed her car to ten or fifteen miles per hour preparatory to negotiating the same. She looked to the west, or her left, and observed the truck driven by Addison on Stoner about a half block away from the intersection. So far as the evidence discloses no other vehicle was approaching from the west. Mrs. Wingfield testifies that she was about a quarter of a block from the intersection when she first observed the truck to her left a half block away coming at a very rapid rate of speed. She says she assumed the truck would stop as it was required to do and, apparently, she gave it no further thought. She then looked to her right and seeing no near on-coming traffic from that direction, she proceeded to go on through the intersection following about one and one-half car lengths behind another vehicle preceding her in the same direction. Mrs. Wingfield was proceeding on the right side of Gilbert near to but east of the center line thereof. When she had traveled more than half-way across Stoner Avenue, that is, after the front half of her car had entered the northeast quarter of this intersection, the front of the truck driven by Addison crashed into and struck Mrs. Wingfield's car broadside, knocking it over to the northeast corner of the intersection where it turned over on its side.
"Addison's truck skidded seventy feet before striking Mrs. Wingfield's car, approximately fifty feet of which was before it entered the intersection. Before applying his brakes he was traveling, according to his own testimony, thirty-five or forty miles per hour. He ran the red light and the `Stop' signs facing him. He says he did not see them and did not see Mrs. Wingfield's car until he struck it. He says he did see a `big' Chevrolet going through the intersection on Gilbert and was trying to avoid striking it. This must have been the car which was preceding Mrs. Wingfield through the intersection. After the collision Addison says he discovered that he had missed the car he was trying to avoid and had hit one he had not even seen."
Following these findings of fact, the judge a quo declared his opinion that according to Addison's own account of the accident he was guilty of the grossest negligence and recklessness, without which the accident would not have occurred and *256 that his negligence was the sole proximate cause of the collision. In awarding plaintiff damages the court rejected a plea of contributory negligence.
On this appeal the only serious defense urged by appellants is a plea of contributory negligence based on the contention that Mrs. Wingfield "either saw or by the use of reasonable care should have seen the approaching defendant vehicle at a time when she was in a place of safety and at a time when by the use of reasonable care she could have brought her vehicle to a stop so as to have avoided the collision, and that her failure to do so was the sole proximate cause of the accident."
Appellants' defense rests upon the generally accepted rule that where a motorist enters an intersection under the protection of being on a favored street or facing a favorable light, it is negligence to fail to notice another vehicle, moving in violation of the traffic right of way. In recognition of this principle our courts on several occasions have held that even the protection of a favorable light does not relieve the operator of a vehicle from all obligation, and that such a driver should see what any ordinary prudent person would see, and should act as an ordinary prudent person should act. See: Murphy v. Star Checker Cab, La.App.1933, 150 So. 79; Bagley v. Standard Coffee Co., La.App. 1936, 168 So. 350; General Exchange Insurance Corporation v. Carp, La.App.1937, 176 So. 145; Dow v. Brown, La.App.1940, 193 So. 239; Lake Charles Stevedores v. Streater, La.App.1942, 6 So.2d 242 followed in Austin v. Streater, La.App., 6 So.2d 248; Seiner v. Toye Bros. Yellow Cab Company, La.App.1944, 18 So.2d 189; Phillips v. Central Surety & Ins. Corporation, La. App.1946, 25 So.2d 310; Stewart v. Keller, La.App.1948, 36 So.2d 893; American Central Insurance Company v. Gaspard, La. App.1949, 40 So.2d 522; Vidrine v. Fontenot, La.App.1950, 49 So.2d 428; Williams v. Ventura, La.App.1951, 54 So.2d 341; Scheib v. Ledet, La.App.1952, 57 So.2d 814; Tidewater Associated Oil Company v. Toye Bros. Yellow Cab Company, La.App.1952, 59 So.2d 174.
The foregoing principle, however, has application only where it appears the circumstances are such that a person exercising only slight care would have noticed the other vehicle and where it appears also that had the other vehicle been noticed it would have been apparent to the operator of the favored vehicle that the operator of the other car either could not or would not stop. This is said to mean that a strict or an extraordinary obligation is not placed upon a favored operator but notwithstanding his position he may not blindly proceed into obvious danger which even one exercising slight care would have noticed and would have avoided. See: Richard v. Canning, La.App.1935, 158 So. 598; Guernsey v. Toye Bros. Yellow Cab Company, La.App. 1937, 172 So. 459; Johnson v. Fabacher, La.App.1937, 175 So. 129; Fortenberry v. Preferred Acc. Ins. Company, La.App.1950, 48 So.2d 657; Salvation Army v. Toye Bros. Yellow Cab Company, La.App.1951, 52 So.2d 873; Spencer v. Crain, La.App. 1951, 53 So.2d 416; Lacaze v. Morway, La.App.1952, 57 So.2d 791.
The facts do not disclose that Mrs. Wingfield acted imprudently in entering the intersection. We do not infer from her testimony that she saw or should have seen the truck as her vehicle slowed to a speed of ten miles per hour as she entered the intersection. She, in fact, testified that when she reached Stoner she looked to her right and seeing no near on-coming traffic from that direction she proceeded forward following about one and one-half car lengths behind another vehicle preceding her in the same direction. The observations of the trial judge are appropriate:
"The evidence satisfies us that Mrs. Wingfield approached this intersection carefully. She complied with the notice of caution and reduced her speed as directed by the amber light and the word `Slow' thereon. She looked to the left and actually observed Addison approaching the intersection at a time *257 when he was a half block away. There is nothing in the record to suggest that at that time Addison was in any apparent position of danger. Even at the rate of speed he admits he was traveling, he had ample opportunity to bring his vehicle to a stop as he was required to do by the City ordinance and as he was warned to do by the red light and the `Stop' signs before him."
We further observe that skid marks from the truck were visible on Stoner 50 feet from the intersection and if we add to this the distance traveled in normal reaction time in the application of braking distance, which is four-fifths of a second, it is clear to us that Addison was still some farther distance away and justifiably Mrs. Wingfield had the right to assume that she could safely enter the intersection and that Addison would have his vehicle under control.
Mason v. Price, La.App.1947, 32 So.2d 853, 854, presents an opinion by Taliaferro, J., which aptly applies the law in an intersection case where the issue there was the same as in the instant case. From this decision we quote:
"The case tenders for decision but one issue and that relates to the plea of contributory negligence. It is clearly shown, in fact is not now seriously denied, that defendant's driver was traveling at a speed in excess of the limit fixed by ordinance of the City and did not stop his vehicle nor even reduce its speed prior to attempting to negotiate the intersection.
"Plaintiff, as he approached the intersection, reduced his car's speed to approximately 15 miles per hour. He observed the truck to his right on Beauregard Street, 75 feet or more away, moving at a speed he estimated to be 45 miles per hour. Knowing that he had the right-of-way and that the intersection was well marked to inform the other driver of his superior right in this respect, and assuming that this superior right would be respected, he did not keep his eyes continuously glued upon the truck's movements. The front end of his car collided with the forward left side of the truck, which veered to its right, continued forward upon and over the curb and sidewalk, and finally rested against a building on the north side of Fourth Street.
"It may be conceded, without affecting the outcome of the case, that by the exercise of a superlative degree of care by plaintiff the accident would and could have been averted. But, under the circumstances, was he required to do this? We do not think so. If, in such circumstances, a motorist should be required to bring his vehicle to a stop or reduce its speed to a snaillike pace at every intersection and await the action of motorists on less favored streets, the advantages the law intends to accord would, in a large measure, be lost. The right-of-way would not be such in reality. In cities where traffic is heavy and continuous on less favored streets, a motorist on a right-of-way street, if so required, would find himself greatly annoyed because of the constant shifting of gears and change in the rate of speed of his own vehicle although driving within the law. The purpose of the law, in such circumstances, would not be accomplished; traffic movements would be hindered rather than promoted thereby.
"In this state, contrary to many other states, the rule of comparative negligence is not recognized; in fact, it is positively banned by the decisions of the Supreme Court. But, in a measure, by indirection, we have such a rule. It is found in the doctrine of proximate cause. The negligence of two persons may produce an accident yet the court will investigate to determine the proximate cause thereof in order to fix liability as between the parties. This is well illustrated in the present case. Granting that plaintiff was not as careful as it was possible for him to have been before attempting *258 to cross the intersection, his fault in this respect, it is clear, was not a or the proximate cause of the collision that followed. The sole proximate cause of the accident was the driver's action in violating laws of the City enacted to protect from injury persons who elect to or from necessity, drive upon certain of its streets. But for this non-observance of the law, the accident would not have happened."
In accord with this holding are: Glen Falls Ins. Co. v. Copeland, La.App. 1946, 28 So.2d 145; Young v. New Orleans Public Service, Inc., La.App.1948, 35 So.2d 881; Salvation Army v. Toye Bros. Yellow Cab Company, La.App.1951, 52 So.2d 873; Spencer v. Crain, La.App.1951, 53 So.2d 416, rehearing denied La.App., 53 So.2d 807.
Appellants, in brief and argument, assert the following authorities support their viewpoint that plaintiff was guilty of contributory negligence and should receive application here: Vidrine v. Fontenot, Stewart v. Keller, Seiner v. Toye Bros. Yellow Cab Company, and Williams v. Ventura, all cases cited supra. It must be recognized that two cases are rarely presented where the factual data is identical. We have carefully examined the citations above referred to and do not find them controlling.
In the Vidrine case Mrs. Vidrine admitted that she saw Fontenot approaching the intersection driving at a speed of approximately 40 miles per hour under such conditions that plaintiff knew the defendant was not going to stop. In the instant case Mrs. Wingfield saw Addison approaching the intersection at a speed which Addison testified was approximately 35 to 40 miles per hour, but at the time Mrs. Wingfield saw Addison he was one-half block from the intersection and when Mrs. Wingfield reached the intersection Addison still was some distance from the intersection. She assumed Addison would stop. It must be remembered that a motorist about to enter an intersection is under the obligation to notice traffic in the intersection as well as to observe traffic approaching the intersection. Just ahead of Mrs. Wingfield was another car proceeding in the same direction and this required some particular observation. Stewart v. Keller, supra, was reviewed in the Vidrine case where the court pointed out the testimony of the truck driver in that case was almost exactly similar to the testimony of Mrs. Vidrine. This case adds no more than the Vidrine case. In Williams v. Ventura, supra, the court observed that Williams entered the intersection without decreasing his speed as he should have done in view of traffic approaching the intersection. All of the above cases appear to resolve themselves upon the point that the motorist held guilty of contributory negligence was proceeding into the intersection either at undue speed or with realization the other car would not stop. This certainly was not true as to Mrs. Wingfield. In Seiner v. Toye Bros. Yellow Cab Company, supra, the judgment does not support the contention of appellant, but, on the contrary, resulted in judgment for plaintiff and the charges of negligence against plaintiff were rejected.
We are inclined to the view that Mrs. Wingfield, though not looking at the truck a second time when she entered the intersection, was justified in believing the approaching truck was slackening its speed or would do so as it neared the intersection. As she crossed into the intersection she had her car well under control and the truck was still some distance away. We do not believe that under the circumstances her failure to realize Addison would run the light and ignore the stop signs contrary to law can be said to be a proximate cause of the accident.
Accordingly, the judgment from which appealed is affirmed. Appellant is taxed with all costs, including costs of appeal.